# CHARLESTOWN.

HUMPHREYS *v.* NEWPORT NEWS & M. V. CO.

(ENGLISH, JUDGE, Absent.)

Submitted June 15, 1889.—Decided September 16, 1889.

1. VENUE—FOREIGN CORPORATIONS—SERVICE OF PROCESS—CAUSE OF ACTION.

   A foreign corporation doing business in this state, having no principal office or president or other chief officer resident therein, may be sued in any county wherein it does business, where the cause of action arose out of this state, if process can be legally served in such county.

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.

   If an employe willfully encounters dangers which are known to him, or are notorious or apparent, the employer is not responsible for an injury occasioned thereby.

3. MASTER AND SERVANT—NEGLIGENCE—DAMAGES.

   If a master is guilty of negligence in failing to procure suitable appliances and machinery for carrying on his business, and injuries result therefrom to his servant, he must respond in damages.

4. MASTER AND SERVANT—DAMAGES—BURDEN OF PROOF.

   In an action by the servant against the master for injury from defective machinery or appliances, the burden is on the servant to show that the same was defective.

5. MASTER AND SERVANT—DAMAGES.

   A servant can not recover for an injury to him from such defective machinery or appliances, unless the master knew or ought to have known of the defect, and the servant was ignorant of such defect or had not equal means of knowledge.

*Simms & Enslow* for plaintiff in error.

*Gibson & Michie* for defendant in error.

BRANNON, JUDGE:

Writ of error to a judgment of the circuit court of Cabell county for $350.00 in favor of Charles H. Humphreys, in an action of trespass on the case brought by him against the Newport News & M. V. Company. The declaration alleged that the defendant was a corporation under the laws of the state of Connecticut, doing business in the states of Kentucky and West Virginia; that the defendant leased and operated a railroad called the "Elizabethtown, Lexington & Big Sandy Railroad," extending from Catlettsburg, in Kentucky, to Lexington, in Kentucky; that plaintiff was in the service of said defendant as fireman on a locomotive, and that it became and was the duty of defendant to use all due, reasonable, and proper means, care, and diligence to avoid accidents, dangers and injuries to plaintiff while in such service as fireman, yet that the defendant, not regarding its duty in that behalf, did not use due and reasonable diligence and care, nor any means, care and diligence to avoid accidents, dangers and injuries to plaintiff, while in such service, but wrongfully, willfully, negligently, and knowingly failed, neglected, and refused to provide and keep in good order and repair a water-tank at a station called "Leon," in said state of Kentucky, on said railroad, from which tank it was the duty of the plaintiff to water the locomotive; that by reason thereof, on 10th December, 1886, while watering the locomotive, without negligence, and ignorant of the defect of the tank, the spout thereof broke, and threw him to the ground, wounding him. The defendant filed a plea in abatement, which, on demurrer, was rejected. It demurred to the declaration, and its demurrer was overruled. It pleaded not guilty, and, upon the trial by a jury, the defendant moved the court to exclude plaintiff's evidence, but the court refused to do so; and it demurred to the evidence, and that demurrer was overruled; and the defendant moved the court to set aside the verdict and grant it a new trial, because the verdict was contrary to the law and evidence, and the damages excessive, which the court refused to do. The defendant excepted to said rulings.

A question arises on the plea in abatement whether a

foreign corporation can be sued in this state for injury upon a railroad operated by it in another state without attachment on property. At common-law a personal action can be maintained in this State against a non-resident natural person in any county where he can be personally served with process. *Mahany* v. *Kephart*, 15 W. Va. 620; *Vinal* v. *Core*, 18 W. Va. 19; *Beirne* v. *Rosser*, 26 Gratt. 538; 1 Rob. Pr. 316, 353. But it is said in *Bank* v. *Bank*, 1 Rob. (Va.) 573, this can not be predicated of a corporation, for, by the common law, unaided by statute, a foreign corporation can not be sued, because by that law process against it must be served on its head, within the jurisdiction where this artificial body exists. Per ALLEN, J., *Railroad Co* v. *Gallahue*, 12 Gratt. 660. A corporation has its *habitat* or domicile, and must dwell, in the state of its creation, and can not migrate to another sovereignty, though it may do business in all places where its charter allows, and the local laws do not forbid. Opinion, *Nimick* v. *Iron Works*, 25 W. Va. 198, citing *Bank* v. *Earle*, 13 Pet. 588, and *Railroad Co.* v. *Koontz*, 104 U. S. 12; and see *Rece* v. *Newport News, etc, Co.*, 32 W. Va. 164, (8 S. E. Rep. 212). The accidental, temporary presence of its officers in the foreign state does not give jurisdiction there. *Moulin* v. *Insurance Co.*. 24 N. J. Law 222; Boone Corp. § 74; *Latimer* v. *Railroad Co.*, 43 Mo. 105; *Mill Co.* v. *Iron Co.*, 32 N. J. Law 15; *Newell* v. *Railway Co.*, 19 Mich. 336.

But it has been held that when a foreign corporation, by its officers, comes within the jurisdiction of another state, and there engages in business, it becomes subject to the process of its courts and its laws. Boone Corp. § 74; citing *People* v. *Railroad Co.*, 48 Barb. 478; *Insurance Co.*, v. *Duerson*, 28 Gratt. 630. See, also, *Abell* v. *Insurance Co.*, 18 W. Va. 400. The Supreme Court of the United States decided that the Baltimore & Ohio Railroad Company, having, under act of Congress, constructed a lateral branch of its road into the District of Columbia, was, by reason thereof, liable to suit there as if it had been an independent corporation of that District, and this suit was for an injury which occurred in West Virginia. *Railroad Co.* v. *Harris*, 12 Wall. 65.

The Virginia Court of Appeals held that a railroad company, incorporated in another state, leasing and operating a railroad in Virginia, was liable for an injury occurring on such road, and might be sued in the courts of that state. *Railroad Co.* v. *Wightman*, 29 Gratt. 431. This decision was based on the fact that it was lessee of a domestic corporation, and bound to fulfill its duties, and not merely on the ground that it had a *quasi* domicile there because it was doing business there. But more certainly it is liable to be sued in this State, where the statute authorizes, in suits against a foreign corporation, service of process in a particular manner. It is within the power of a state legislature to authorize a suit against a foreign corporatioa *in personam*, as well as a suit *in rem*. *Andrews* v. *Railroad Co.*, 99 Mass. 534; Boone Corp., *supra*; *Barnett* v. *Railroad Co.*, 4 Hun 114; *Bawknight* v. *Insurance Co.*, 55 Ga. 194; Jones, Mortg. § 406.

Our statute (Code 1887, c. 123, § 1, cl. 2) provides that an action at law may be brought in the Circuit Court of any county wherein, "if a corporation be a defendant, its principal office is, or its mayor, president or other chief officer resides, or if its principal office be not in this State, and its mayor, president, or other chief officer do not reside therein, wherein it does business." Section 7, c. 124, provides for several modes of service of process on corporations, and at its close, to avoid any failure resulting from inability to serve as before specified, provides that, "if there be not within the state any other person on whom there can be service as aforesaid, service on any director, agent, (including in the case of a railroad company a depot or station agent in actual employment of the company,) or other officer of the corporation against which the case is, shall be sufficient." These provisions apply to all corporations, domestic or foreign. I therefore am of opinion that a foreign corporation doing business in this State may be sued in any particular county of this State provided by said second clause of section 1 of chapter 123, if service can there be had. As under the common-law a natural person, non-resident, may be sued in a personal action in this State, in any county where found, so may a foreign corporation doing business here be sued in

this State in the county pointed out by that statute. If the corporation does business in the State, and thus has such a domicile as renders it amenable to our process, as indicated by Judge HAYMOND in *Mahany* v. *Kephart*, 15 W. Va. 623, I do not see that it is essential that the cause of action arose in the State. In the case of *Wagon Co.*, v. *Insurance Co.*, 27 W. Va. 314, jurisdiction was sustained against a foreign insurance company; but that was based on a special statute, applicable to foreign insurance companies. But in *Shafer* v. *O'Brien*, 31 W. Va. 601 (8 S. E. Rep. 298) where there was service of process on a foreign corporation, not an insurance company, jurisdiction to render a personal decree against it was maintained by this Court.

Coming now to the plea in the abatement, it does not negative the fact that the company does business in Cabell county, and, as jurisdiction, under circumstances stated in the statute, may be in a county wherein the company does business, the plea is for that reason defective. It avers that the company does business in West Virginia, and therefore there must be jurisdiction in some of the counties of this State. It avers that the company operates the Chesapeake & Ohio Railroad; and, if we take cognizance of the fact that it runs through Cabell county, the plea thus avers a fact which destroys itself. A plea in abatement must be certain to all intents. But the pleader did not, could not, rely on any such allegation, but intended his plea to assert that this company had its principal office in this State, at its Charleston station, and thus, under the statute quoted, must be sued in Kanawha county, and relies on section 4, c. 3, Acts 1870, entitled "An act confirming and amending the charter of the Chesapeake & Ohio Railroad Co." That section provides "that, upon the completion of the road, if the said company shall not deem it expedient to establish its principal office within the State, its place of business at or nearest Charleston, in the county of Kanawha, shall, for all purposes required by law, be deemed to be such office within this State." This plea avers that the principal offices of the company were in New York when this suit began, and that its president and other chief officers were residents of New York, "and that its principal place of business in West Virginia,

on the Chesapeake & Ohio Railroad, which it operates, as aforesaid, is the station or depot on said line of railroad opposite the city of Charleston, in the county of Kanawha, State of West Virginia, and for all purposes required by law is deemed the principal office in this State of said Chesapeake & Ohio Railroad, and this defendant, its lessee." The plea does not aver that there were officers there on whom service might have been had. As, then, the plea does not aver all facts necessary to make the Charleston station such office, we are not called on to decide what would be the effect of the plea were it not defective in the point indicated. Thus failing to aver facts necessary to make Charleston the principal office, it does not exclude the jurisdiction which may exist in the Circuit Court of Cabell county as a county in which the company does business, and that Cabell is not such a county is not averred by the plea; and moreover this is a different corporation from the Chesapeake & Ohio Railroad Company. Therefore the court did not err in rejecting the plea in abatement.

The next question is whether the court properly decided the demurrer to the declaration. The declaration is sufficient. The counsel of defendant, in his brief, suggests that it is bad because it does not allege specifically that it was the duty of defendant to establish water-tanks at certain points along the railroad, and in performing that duty had established one at Leon, and failed to keep it in repair. The assignment of error suggests that the declaration fails to charge, except by implication, that the defendant had a tank at Leon, and that the charge is that defendant "failed, neglected, and refused to provide and keep in good order and suitable repair a water-tank at a certain station" called "Leon," and not the water-tank, and argues that it was not the duty of defendant to keep a water-tank at Leon, or any other particular place, and its failure to keep one there forms no breach of duty; but the charge is that it failed to provide and keep in good order and suitable repair a water-tank at Leon station; and this, taken with other parts of the declaration, viz., the words, "from which said water-tank it was the duty of the plaintiff to water the locomotive-engine of which said plaintiff was fireman," and the allegation that while plaintiff, "with-

out any knowledge on his part that the said water-tank was not in good order and repair, was engaged in watering the engine, the spout of the said water-tank, on which said spout the plaintiff was compelled to stand in order to water, and, in watering, the said steam locomotive engine, suddenly, and with great force and violence, broke and fell to the ground, and precipitated the said plaintiff, with great force and violence, to the said ground, a long distance, to wit, fifteen feet," whereby, *etc.*, fairly shows that the company had established a tank there, and that the point of complaint was not that the company had failed to provide a tank there, but that it was not kept in good order and repair.

It is true the common-law rule of pleading is that "pleadings must not be argumentative; in other words, they must advance their positions of fact in an absolute form, and not leave them to be collected by inference and argument only," (Steph. Pl. 384;) which rule should still be observed. Yet our statute, made, not to dispense with the rule, but as a statute of jeofails to cure the defect after it has been made, provides that "on a demurrer, unless it be to a plea in abatement, the court shall not regard any defect or imperfection in the declaration or other pleading, whether it has heretofore been deemed mispleading or insufficient pleading, or not, unless there be omitted something so essential to the action or defence that judgment according to the law and the very right of the cause can not be given." Code 1887, c. 125, § 29. In actions for tort the rule as to declaration is liberal, it being sufficient to describe the injury generally, without setting out particulars of defendant's misconduct. Opinion in *Railroad Co., v. Whittington,* 30 Gratt. 810; *Hawker v. Railroad Co.,* 15 W. Va. 628. If it is specific enough to inform the master of what he is called upon to answer, so that he will not be surprised at the trial, it is sufficient. Opinion, *Hoffman v. Dickinson,* 31 W. Va. 142, (6 S. E. Rep. 53).

The next question is: Did the court err in passing on the demurrer to the evidence and the motion to exclude plaintiff's evidence? They are governed by the same principles. *James v. Adams,* 8 W. Va. 568; *Johnson v. Raidroad Co.,* 25 W. Va. 570. In *Hoffman v. Dickinson,* 31 W. Va. 142

(6 S. E. Rep. 53) and *Berns* v. *Coal Co.*, 27 W. Va. 285, will be found lucid discussions of the law relative to actions by servants against masters for injuries received in service, and they contain principles ruling this case.   There will be found the following points : "When a servant enters into the employment of a master, he assumes all the ordinary risks incident to the employment, whether the employment is dangerous or otherwise." "The master must provide for the safety of his servant, as far as can reasonably be expected under the circumstances ; but he is not obliged to take more care of his servant than he would be expected, as a prudent man, to take of himself." "If a servant willfully encounters dangers which are known to him, or are notorious, the master is not responsible for injury occasioned thereby." "If the master has been guilty of negligence in failing to procure suitable appliances or machinery for carrying on his business, and injury results therefrom to his servant, he must respond in damages."

In *Hoffman* vs. *Dickinson, supra,* it is held : "A servant can not recover for an injury suffered, in the course of his employment, from a defect in the machinery or appliances used by the master, unless the master knew, or ought to have known, of the defect, and the servant was ignorant of such defect, or had not equal means of knowledge."

The plaintiff's evidence shows that he was fireman on a locomotive on defendant's road, and that the engine stopped for water at a water-tank; that there was a spout attached to the tank by a sort of hinge on top of the spout or pipe, which spout conveyed the water from the tank to the tender of the locomotive ; that it was made of galvanized sheet-iron or heavy tin, fourteen or fifteen inches large at the end attached to the tank, tapering towards the other end, where it was six or seven inches.   The tank is four or five feet from track, and the tender is four feet from it.   This is pulled down, and one end placed in a hole in the tender so as to let the water into it.   A witness for plaintiff says : "There is a small rope hanging loose, so that the fireman can reach and catch the string to pull the pipe down.   Then it is customary for them to put their foot on the pipe that carries the water from the water-tank to the engine.

This pipe projects out so that you can reach out and catch the chain and pull it down. Then after the pipe is pulled down, he places his foot on the end of the pipe, over the man-hole, and reaches up and catches the rope or chain, sometimes a lever. It is necessary to keep your foot on the end of the pipe in order to keep the pressure from forcing the end of the pipe out of the man-hole."

The plaintiff himself says: "The chain was too short;" that is, as I understand, the chain which was pulled to let the water on; and he walked on the spout three or four feet, and as soon as he pulled down on the lever it shot loose from the tank. There are two chains with large balls on them hanging there, and he grabbed them as he came down. He was asked if he could have gotten the water any other way, and answered, "I did not know of any other way." He was asked, when the chain and rope are too short, what firemen did to get water, and answered, "I have climbed on the water-tank to get it." He was asked, "Could you have got the water any other way without getting on the spout, and climbing on the top of the tank?" and answered, "No; to climb on top of the tank is what would have to be done." He was asked, "If you had wanted to climb on the tank, could you have got there any other way than by going on the tank without getting on the ground, by holding to the chains, and walking across the spout?" and answered, "No." He stated that he had been running on the road four or five months prior to the accident, had frequently taken water at the station, had taken it there at every trip, which were frequent, and two or three days before he was hurt. When asked whether the chain was long enough for him to reach it, he replied: "I think the rope and chain were both too short." He said he did not notice anything the matter with the spout; that it came down all right, and when down stood all right. He stated on cross-examination that it was only when the water was turned on that he was knocked off, thus showing that by means of the rope or chain he had already succeeded in letting on the water without climbing on top of the tank, showing that the rope or chain was reached by him.

The evidence was that the spout was stout, and a witness

of plaintiff said it would support the weight of plaintiff; and a witness (the engineer) introduced by defendant said he had never heard any complaint about the tank, and is not contradicted in this. Besides plaintiff's statement that he thinks the rope which was intended to let on the water was too short, there is no evidence to show any defect in this tank; nothing to show but that it was of average good quality, such as is ordinarily used, perhaps of best quality. No negligence is proven against the company in this respect. If it be said that the rope or chain by which the water was let on was too short, it is to be replied that they are not shown to have lost any of their length; they were likely such as are commonly used on railroads; are not shown to be otherwise; the plaintiff merely thinks they were too short, but gives no measurement; does not produce any other evidence, or any certain, definite evidence, and is indefinite himself. He says he had let down the spout, was standing on it, and had let on the water before it fell; so it seems it was not necessary for him to walk the spout to climb on top the tank. He could and should have got on the ground if the rope was too short, and gone to the tank instead of walking this pipe: at any rate, not have taken the dangerous expedient of walking it, which itself was negligence in him. The spout was not designed for this. His proper place was on the tender, and if he stood anywhere on the spout it should have been on that end supported by the tender, not several feet from it, thus himself breaking it down. He assumed this risk. He must have known it was dangerous. If the rope or chain was in fact too short, strange he had not before discovered it. If in fact, then, too short, he yet should not have stood on this spout. And he had as good opportunities to know of the defect as any one else,—better than his employers. Who had better opportunities than a fireman? The breaking of this spout was caused, not by its defects, but by the imprudent act of the plaintiff. That firemen generally stand out on the spout does not render the act proper, and thereby render a railroad company responsible for the result. It is their own risk. In my view the plaintiff's own negligence was the proximate cause of the accident.

But, again. If there were a defect in the tank, there is no evidence that the company knew of it, or could or should have known it. If it had become defective, how long before? The evidence does not answer. Did the company omit the necessary inspection? We do not know. Was the defect such as an inspection would have detected? We do not know from the evidence. If the chain or rope had suffered any diminution in length from wear or loss, when did it occur,—an hour or a moment before the accident? Likely not long before, for no one, not even plaintiff, noticed it, or mentioned it; at any rate he does not say so. To hold the company responsible it is not enough simply that an accident occurred; it must be attributable to the company's negligence, and the burden to show it by satisfactory evidence is on the plaintiff. *Hoffman* v. *Dickinson, supra;* 2 Hil. Torts, c. 40, § 24*a; Cooley, Torts, 673; *Gerity* v. *Haley*, 29 W. Va. 103,

Treating the evidence in the most favorable light, in the manner in which we are required to treat it upon a demurrer to evidence, the evidence is not sufficieht to sustain the plaintiff's case; and the Circuit Court erred in its action on the defendant's motion to exclude the evidence of plaintiff, and on the demurrer to the evidence. Therefore the judgment of the Circuit Court of Cabell county, rendered on the 13th day of December, 1888, is reversed, set aside, and annulled, with costs to plaintiff in error; and this Court, proceeding to render such judgment as the Circuit Court should have rendered, being of opinion that, upon the demurrer to evidence, the law is for plaintiff in error, it is therefore considered by the Court that the plaintiff take nothing by his bill, and that plaintiff in error recover from defendant in error its costs about its defence in said Circuit Court expended.

Reversed.