# CHARLESTON.

## KETTERMAN v. DRY FORK RAILROAD CO.

### Decided December 21, 1900.

1. BILL OF EXCEPTIONS—*Time to File.*

   If a bill of exceptions be both signed and certified by the judge within thirty days from the close of a term of court, as it must be, the fact that the certificate of the judge does not reach the clerk, or is not recorded by him, within thirty days, will not vitiate the bill; but the certificate must be recorded in order to make the bill a part of the record. (p. 608).

2. SUMMONS—*Return Day—Limitation.*

   A summons commencing a suit, which is void because it has a wrong return day, is nevertheless effective to bring into being a suit such that its dismissal by the court for that cause will give one year after its dismissal for a new suit, under the statute of limitations. (p. 608).

3. NEGLIGENCE—*A Question of Fact.*

   Though questions of negligence and contributory negligence are, ordinarily, questions of fact to be passed upon by a jury, yet, when the undisputed evidence is so conslusive that the court would be compelled to set aside a verdict in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict. *Elliott* v. *Railway Co.,* 14 Sup. Ct. 85, 150 U. S. 245, 37 L. Ed. 1068. (p. 610).

4. NEGLIGENCE—*Fact for Jury—When?*

   When, in actions for negligence, the facts are undisputed, and such that all reasonable minds must draw the same conclusions from them, it is the duty of the judge to say, if asked, as a matter of law, whether or not they make a case of actionable negligence. In such cases, however, when the facts are in dispute, it is the duty of the judge to submit them to the jury. (p. 611).

5. NEGLIGENCE—*Evidence Sufficient to Prove.*

   In actions for negligence, the courts have abrogated the doctrine that a mere scintilla of evidence from which there might

be a surmise of negligence is sufficient to carry a case to the jury, and have adopted the more reasonable rule that there is a preliminary question which the judge must decide, if asked, whether, granting to the testimony all the probative force to which it is entitled, a jury can properly and justifiably infer negligence from the facts proved; for, while negligence is usually an inference from facts, it must be proved, and competent and sufficient evidence is as much required to prove it as to prove any other fact. (p. 612).

6. ACTIONS ON NEGLIGENCE—*Conflict*.

In all actions founded on negligence, whenever the facts are in dispute or conflicting, or the credibility of witnesses is involved, or the preponderance of evidence, or whether the facts admitted or not ·denied are such that fair-minded men might draw different inferences from them, it is a case for jury, and a case should not be withdrawn from the jury un, .ss the inferences from the facts are so plain as to be a legal conclusion,—so plain that a verdict for the plaintiff would have to be set aside as one rendered through prejudice, passion, or caprice. (p. 617).

7. ACCIDENT—*Question of Fact—Burden of Proof*.

The mere fact that an accident happens upon a railroad is not alone sufficient, as between employer and employe, to raise a *prima facie* case of negligence on the part of the railroad company, though it would be in the case of a passenger injured. Where an employe injured by an accident attributes it to defective machinery or appliances, he must prove such defect; he carrying the burden of proof. (p. 618).

Error to Circuit Court, Tucker County.

Action by Mary S. Ketterman against the Dry Fork Railroad Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

E. D. TALBOTT, for palintiff in error.

C. WOOD DAILEY, for defendant in error.

BRANNON, JUDGE:

Michael Ketterman and several other section hands working on the Dry Fork railroad, at the close of the day's labor started home upon a handcar of said railroad, and a car, which had just been loaded with lumber, from some cause broke away, ran down a heavy grade and overtook and collided with the handcar and killed Ketterman, and his administratrix sued the Dry Fork

Railroad Company to recover damages for his death. The court, on motion of the defendant, excluded the plaintiff's evidence and directed the jury to find a verdict for the defendant, and upon such verdict gave judgment for the defendant.

The defendant claims that we cannot review the case, because the bill of exceptions was not, within thirty days after the close of the term, sent to the clerk, and that the order of the judge certifying the bill of exceptions was not received or recorded by the clerk within that time. That is no matter. So the bill of exceptions is signed within thirty days, it is good; for the transmission of the bill of exceptions and order of the judge are only ministerial acts, as is also the act of recording the order, and section 9, chapter 131, Code 1891, does not require such transmission and recordation within any particular time. But the certificate must be recorded to make the bill a part of the record. *Craft* v. *Mann,* 46 W. Va. 478.

The defendant pleaded the statute of limitations, and the plaintiff replied that she had instituted another action for the same cause and that it had been dismissed by reason of defect in the summons, which was quashed by the court on motion of the defendant, and that the second action was brought within one year after such dismissal of the first action, and the replication sought to save the second action from litmitation under section 19, chapter 104, Code, providing that if an action commenced within time be dismissed for "any cause which could not be plead in bar of the action," another action may be brought within one year after the dismissal of the first action. To this replication the defendant filed a general rejoinder. That rejoinder, traversing the replication, is based by the pleader on the theory that the summons in the first action brought no action into being, but was a simple nullity, for the reason that the summons bore date 6th of January, 1896, and required the defendant to appear "on the 1st Monday in January next," and was therefore void, and therefore could not answer for an action within the meaning of Code, section 19, chapter 104. After this summons had been served the clerk amended it by erasing the word "next" and inserting in its place the figures "1896." Under section 5, chapter 124, Code 1891, the clerk may, in proper cases, amend a summons commencing an action; but I do not think that after service he can so amend it as to change the return day. The circuit court properly quashed the summons. I do not,

however, regard the position taken for the defendant, that the summons was so vacant and void as not to originate an action, as sustainable. That summons was voidable, we may say void, for all purposes of the further prosecution of the action, but not to all intents and purposes, as I do not think a judgment upon it would be utterly void, but only voidable. I have no doubt that, for the purpose of saving a second action from the statute of limitations, the summons is to be regarded as legally efficient to bring an action into being. The very object of the statute is to give further time for a second action when the first action is for any cause abortive, ineffectual for recovery. No matter what was the cause of the first action's failure, no matter how bad the writ, no matter whether you call it void or voidable, it is all sufficient to save the second action. It is within the very reason of the statute; it is just the kind of a trouble for which the statute intended to save the second action. It aids the defendant none to cite *Lawrence* v. *Winifrede,* 35 S. E. 925, holding that a first action dismissed for failure to file a declaration will not save a second from the bar of limitation, as that case was a voluntary dismissal by the party, whereas here the fault is the clerk's, and the dismissal the act of the law.

We come now to the question, did the court err in taking the case from the jury by excluding the plaintiff's evidence and making a peremptory instruction to the jury to find for the defendant? In view of the fact that counsel for the plaintiff severely animadverts upon the action of the court in this ruling, as if unwarranted by law, and in deference to that counsel, who presents the point with confidence, I have taken pains to review the subject to see how far it is sustained by our own decisions and decisions elsewhere. I concede that in years gone by the practice of excluding the plaintiff's evidence from the jury as insufficient to sustain the action, or of directing a verdict for the defendant, which is the same thing, was not used. In my own younger years it struck me, at first blush, as an invasion of the prerogative of a jury; but more mature reflection and examination has brought me, as it must bring others, to the conclusion that it is well sustained in reason and by the most eminent authority. This practice is nowadays in general use. 6 Ency. Pl. & Prac. 673. It is a progress or evolution in legal procedure sanctioned by the highest authority; so much so that it is now error to deny the motion in a proper case. *Wandling* v. *Straw,*

25 W. Va. 692; 6 Ency. Pl. & Prac. 690. I may say that *Ritz* v. *Wheeling*, 45 W. Va. 262, fairly states the law in stating when the exclusion of the plaintiff's evidence is proper even in negligence cases. The opinion says: "The case is not one involving credibility of witnesses, or weight of evidence, or the proper inferences and deductions from evidence, which are matters proper for the consideration of a jury; for the material facts of the case are undisputed, and the case presents simply the question of law whether, upon the facts, a liability rests on the city. The question is was the city guilty of negligence? Negligence is, most frequently, a question of mixed law and fact, proper to go before a jury; but, where the facts are such that ordinary men will not differ about their affect in in not showing negligence, it becomes a question of law for the court, not one of fact for the jury, and if the evidence is not colorably sufficient to show negligence, the court ought to take the case from the jury and direct a verdict against the plaintiff. When the evidence is so clearly deficient as to give no support to a verdict for plaintiff, if rendered, the evidence should be excluded from the jury. *Klinkler* v. *Iron Co.*, 43 W. Va. 219, (27 S. E. 237) ; 1 Sherm. & R. Neg. (2d Ed.) s. 56. Where the case turns on the weight and effect of the evidence in proving or not proving facts necessary to support the action, and the evidence appreciably goes to prove such facts, it ought to go to the jury, as a verdict upon such evidence gives it a force which it might not have with the judge before verdict, and fortifies the case more against the action of the court, as the court cannot set aside the verdict unless plainly and decidedly contrary to or without evidence; but where the case is not such, but one of undisputed or indisputable facts, leaving it only a matter of law whether the facts show a liability on the defendant, the court should take the case from the jury, and direct a verdict, if the evidence shows no case for the plaintiff, because, if there were a verdict for him, it would be a finding against law, and the court always annuls a verdict against law upon conceded or indisputable facts. It is different then from a motion for a new trial, where the verdict rests on the credibility of witnesses or the weight and effect of evidence. *Grayson's Case*, 6 Grat. 712; *Poling* v. *Railroad Co.*, 38 W. Va. 645, pt. 8 syl., (18 S. E. 772)."

To this doctrine our own earlier and subsequent decisions commit us. As PRESIDENT LUCAS said in *Carrico* v. *Railroad*

*Co.,* 35 W. Va. 389, the case of *Dresser* v. *Transportation Co.,* 8 W. Va. 553, is, strictly speaking, one of variance between allegation and proof, and clearly in such case, as PRESIDENT LUCAS said, it is proper to strike out the plaintiff's evidence and direct a verdict for the defendant. 6 Ency. Pl. & Prac. 688. Still, the *Dresser Case* lends support to the practice, and was evidently so intended by the court. *James* v. *Adams,* 16 W. Va. 245, can scarcely be cited for the doctrine, being a case of variance. But *Johnson* v. *Railroad Co.,* 25 W. Va. 570, holds that doctrine unquestionably. That case says that it is with the jury to say what particular facts constitute negligence from all the evidence and that where the evidence is such that reasonable men unaffected by bias or prejudice would be agreed concerning the presence or absence of due care, the court is justified in saying that the law deduces the conclusion accordingly, and if the facts are unambiguous, and there is no room for two honest and apparently reasonable conclusions, the court should not be compelled to submit the question to the jury as one in dispute. These principles were solemnly adjudged in 1885 by this Court as sound. They were commended as an admirable statement of the true rule laid down by the eminent Judge Cooley upon an examination of the authorities, and it was sedately adopted for future practice in this State. So *Wandling* v. *Straw,* 25 W. Va. 692, says: "Where all the evidence introduced by the plaintiff is clearly insufficient to sustain a verdict in his favor, should such verdict be rendered, it is error in the court to overrule the defendant's motion to exclude such evidence from the jury, if made before any evidence be offered on behalf of the defendant." That case says as a corollary that if the evidence is insufficient the verdict must be set aside. *Schwarzbach* v. *Pro. Union,* 25 W. Va. 622, contains the same doctrine, holding that if the court would on demurrer to evidence hold the plaintiff's evidence insufficient for a verdict, it ought to exclude the evidence. *Smith* v. *County Court,* 33 W. Va. 713; *Bon Aqua Co.* v. *Standard Co.,* 34 *Id.* 764, and *Love* v. *Powell,* 36 *Id.* 96, recognize this practice as established practice. In *Carrico* v. *Railroad Co.,* 35 W. Va. 381, the opinion by PRESIDENT LUCAS, while it laments the coming of the practice into West Virginia, admits that the practice is "too firmly established by cases of binding authority to be shaken, and all we can do is to define its legitimate limits and restrain its exercise by accurate and proper definition." In *Henry* v. *Ohio*

*River R. Co.,* 40 W. Va. 234, it is laid down that, "When the evidence tends in a fairly appreciable degree to sustain the plaintiff's action, the court must not strike out his evidence or direct a verdict for the defendant." In *Raines* v. *Railway Co.,* 39 W. Va. 50, it is held that, "When a given state of facts is such, that reasonable men may differ upon the question, whether there was negligence or not, the determination of the matter is for the jury; but when the facts are such that all reasonable men must draw from them the same conclusion—when there is no room for two reasonable opinions about it—then it becomes a question of law for the court." The direction of a verdict for the defendant, was held proper. The case of *Woolwine* v. *Railroad Co.,* 36 W. Va. 330, strongly supports the rule. *Klinkler* v. *Wheeling Co.,* 43 W. Va. 219, also supports the rule in its syllabus which says: "When the evidence is so clearly deficient as to give no support to a verdict for plaintiff, if so rendered, the court should exclude the evidence from the jury." *Guinn* v. *Bowers,* 44 W. Va. 507, again recognizes the practice. Thus, whatever our predilections, we must all admit that the practice is established in this State. That practice is overwhelmingly the rule elsewhere. In *Commissioners* v. *Clark,* 94 U. S. 284, the opinion by Justice Clifford says: "Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. *Ryder* v. *Wombwell,* Law Rep. 4. Exch. 39. Decided cases may be found where it is held that if there is a scintilla of evidence in support of a case, the judge is bound to leave it to a jury; but the modern decisions have established a more reasonable rule, to-wit, that before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Law Rep. 2. Priv. Council Apps. 335; *Improvement Co.* v. *Munson,* 14 Wall. 448; *Pleasants* v. *Fant,* 22 *Id.* 120; *Parks* v. *Ross,* 11 How. 373; *Merchants' Bank* v. *State Bank,* 10 Wall. 637; *Hickman* v. *Jones,* 9 Wall. 201." In *Schofield* v. *Chicago &c. R. Co.,* 114 U. S. 618, it is laid down by the United States Supreme Court as "the settled law of this court, that

when the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant," citing *Herbert* v. *Butler,* 97 U. S. 319 ; *Bowditch* v. *Boston,* 101 *Id.* 16 ; *Griggs* v. *Huston,* 104 *Id.* 553 ; *Randall* v. *B. & O. R. Co.,* 109 U. S. 478 ; *Anderson* v. *Beal,* 113 *Id.* 227 ; *Baylis* v. *Travellers' Ins. Co., Id.* 316.

I add the case of *Gunther* v. *Liverpool Ins. Co.,* 134 U. S. 110, holding that "when there is no evidence to warrant a verdict for the plaintiff, so that if such a verdict were returned it would be the duty of the court to set it aside, a verdict may be directed for the defendant. We thus see that the highest court in the land has iterated and reiterated this rule. The U. S. Circuit Court of Appeals has held that while questions of negligence and contributory negligence are ordinarily questions for a jury, "yet, when the undisputed evidence in a case involving such questions is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw·the case from the jury and direct a verdict for the defendant." *Southern P. Co.* v. *Johnson,* 44 U. S. App. 1. The language there used is taken from *Elliott* v. *Chicago &c. R. Co.,* 150 U. S. 246. Many other Federal cases are there cited for the holding. In *Paton* v. *Southern R. Co.,* 42 U. S. App. 567, the circuit court of appeals held that "when in actions for negligence the facts are undisputed and such that all reasonable minds must draw the same conclusion from them, it is the duty of the judge to say, as a matter of law, whether or not they make a case of actionable negligence ; in such cases, however, when the facts are in dispute it is the duty of the judge to submit them to the jury. In actions of negligence the courts have long since abrogated the doctrine that a mere scintilla of evidence from which there might be a surmise of negligence is sufficient to carry a case to the jury, and have adopted the more reasonable rule that in all cases there is a preliminary question which the judge must decide, whether, granting to the testimony all the probative force to which it is entitled, a jury can properly and justifiably infer negligence from the facts proved ; for, while negligence is usually an inference from facts, it must be proved, and competent and sufficient

evidence is as much required to prove it as to prove any other fact. In all actions founded on negligence whenever the facts are in dispute or conflicting, or the credibility of witnesses is involved, or the preponderance of evidence, or when the facts admitted or not denied are such that fair-minded men might draw different inferences from them, it is a case for the jury, and a case should not be withdrawn from the jury unless the inferences from the facts are so plain as to be a legal conclusion—so plain that a verdict for the plaintiff would have to be set aside as one rendered through prejudice, passion or caprice." I have not found a better statement of the rule than that contained in the case just cited. In that case Judge Goff delivered a very pointed opinion, well based on authority, in support of the rule approved by the modern practice. Thus it is very plain what is the rule in the Federal courts all over the land. How as to state courts? The statement found in 6 Ency. Pl. & Prac. 678, that "while the practice of directing the verdict has been one of slow development, and is subject in some jurisdictions to the qualifications above discussed, the rule now prevailing is that a case may not be left to the jury, unless there is evidence which will warrant a verdict in favor of the party producing it." I cannot weary with tracing the decisions in the various states upon this subject, and must content myself with saying that the great bulk of authorities will show that the present practice is as just quoted from the Encyclopaedia. Cases there cited from many states will abundantly sustain this proposition. See *Simmons* v. *Chicago R. Co.,* 110 Ill. 340; 32 Am. St. R. 869, note; *Hillyer* v. *Dickenson,* 154 Mass. 504; *Brooks* v. *Old Colony Railroad Co.,* 168 Mass. 167; *Moore* v. *Baker,* (Ind.) 51 Am. St. R. 203; *Linkauf* v. *Lombard,* 137 N. Y. 417, 33 Am. St. R. 743; 2 Thompson, Trials, 1604. In Maine it was forcibly said "A jury cannot be permitted to find there is evidence of a fact when there is not any. Nor can it do so when the evidence is too slight or thrifling to be acted upon by a jury. The evidence must have some legal weight." *Conner* v. *Giles,* 76 Me. 134. See Wells on Question of Law and Fact, s. 537.

It will be noticed that some of the West Virginia cases above cited say that the court should not strike out the evidence where it appreciably tends to sustain the party's action or defense. What does the word "appreciably" here mean? That the rule above stated as the rule of practice is established beyond ques-

tion is plain, the difficulty being one of application only. The copious quotations I have made above convey the best understanding that is possible for use. The word• "apreciably" must be understood to mean appreciably in a legal sense. What is that practically speaking? I answer that the evidence must be such as would forbid the court from setting the verdict aside. If that evidence is so weak as not to carry the case in favor of him who bears the burden of proof, so that a verdict based upon that evidence ought to be set aside, the court commits no error in sustaining a motion to exclude, because after verdict the same question comes to the court upon a motion for a new trial. Why go through with the formality of a verdict simply to set it aside? What is the reason of the rule of which I have above spoken? Let Justice Miller in *Pleasants* v. *Fant,* 22 Wall. 121, answer: "It is the duty of a court to protect parties from unjust verdicts arising from ignorance of the rules of law and evidence, from impulse of passion or prejudice, or from any other violation of his rights in the conduct of a trial. This is done by making plain to them the issues they are to try, by admitting only such evidence as is proper in these issues, and rejecting all else; by instructing them in the rules of law by which that evidence is to be examined and applied, and finally, when necessary, by setting aside a verdict which is unsupported by evidence or contrary to law. In the discharge of this duty it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor; that is the business of the jury; but conceding to all the evidence offered the greatest probative force which according to the law of evidence it is fairly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court after a verdict to set it aside and grant a new trial. Must the court go through the idle ceremony in such a case of submitting to the jury the testimony on which the plaintiff relies, when it is clear to the judicial mind that if the jury should find a verdict in favor of the plaintiff that verdict would be set aside and a new trial had? Such a proposition is absurd, and accordingly we hold the true principle to be, that if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should

say so to the jury. In such a case the party can submit to a non-suit and try his case again if he can strengthen it, except where the local forbids a non-suit at that stage of the trial, or if he has done his best he must abide the judgment of the court, subject to a right of review, whether he has made such a case as ought to be submitted to a jury; such a case as the jury might justifiably find for him a verdict." That case and many of the authorities above cited put what I say is the true test, that is, whether the court should set aside the verdict, if rendered. If it should, it is no error to direct a verdict; otherwise it is. This is the test put by Judge Goff in *Palton* v. *Southern R. Co.,* 42 U. S. App. 577. This is the test put by the Missouri supreme court in *Hite* v. *Metropol. R. Co.,* 130 Mo. 132, 51 Am. St.. R. 555. So Thomp. Trials, s. 2250. I regard it the test, the criterion, affirmed by reason and authority, the only practicable test useful in daily practice. There is no state where the power of the court to exclude evidence where it is not sufficient to support a verdict for the party carrying the burden of proof is, logically, more applicable than in the two Virginias, because there is no state where greater freedom always been exercised in setting aside verdicts as contrary to or without sufficient evidence, than in the two Virginias, as their reports will attest. Just here to show how the rule above stated has gradually grown and become established, I note that PRESIDENT LUCAS in *Carrico* v. *Railroad Co.,* 35 W. Va. 395, cited a Missouri case declaring that there was no law in that state authorizing the court at the close of the plaintiff's case to strike out his testimony as insufficient to make out his case; but that court has long since admitted and enforced the rule of excluding the plaintiff's evidence where it is not sufficient to support a verdict. *Powell* v. *Missouri Pac. Co.,* 76 Mo. 80; *Jackson* v. *Hardin,* 83 Mo. 186; *Hite* v. *Metropol. Co.,* just cited. In *Winning* v. *Detroit,* 64 Mich. 93, 8 Am. St. R. 804, and *Shellenberger* v. *Chicago &c. R. Co.,* 61 Iowa 714, it is held that the judge must decide as a preliminary question whether there is any evidence to warrant a verdict for the party carrying the burden of proof.

At one time in some of the courts, and perhaps in a very few to-day, a rule prevailed known as the "Scintilla of Evidence" rule, meaning that a verdict may be directed only where there is no evidence whatever to support the party's case, and that where there is even a scintilla of evidence, it cannot be done. It may

be claimed that the cases of *Carrico* v. *Railroad Co.*, 35 W. Va. 389, and *Guinn* v. *Bowers*, 44 W. Va. 507, lean towards that rule; but they do not explicitly approve it. It is very certain that the great current of authority in England and America repudiate that rule. It is very certain that the West Virginia cases and other abundant authority sustain the rule above stated, that the evidence must not merely tend in some small degree to sustain a verdict, but it must be sufficient to justify a verdict, to prove the case according to its nature, by that degree of weight required by the law of evidence, not a mere color of weight. It will be seen from 6 Ency. Pl. & Prac. 678, that the scintilla of evidence rule is not now the law. "The old rule that a case must go to the jury if there is a scintilla of evidence has been almost everywhere exploded. There is no object in permitting a jury to find a verdict which a court would set aside as soon as found. The better and improved rule is, not to see whether there is any evidence, a scintilla, or crumb, dust of the scales, but whether there is any upon which a jury can, in any justifiable view, find for the party producing it, upon whom the burden of proof is imposed." *Conner* v. *Giles*, 76 Me. 132, 134, cited in 2 Thomp., Trials, s. 2249. The scintilla rule has been frequently condemned in the United States Supreme Court. *Commissioners* v. *Clark*, 94 U. S. 284; *Improvement Co.* v. *Munson*, 14 Wall. 448; *Pleasants* v. *Fant*, 22 Wall. 120. So in *Hillyer* v. *Dickinson*, 154 Mass. 504, and 2 Thompson on Trials, ss. 2248, 2249, 2250. In North Carolina the leaning has been rather against the rule giving power to the court to exclude the evidence, but in the latest cases the power is conceded, and it is admitted that there must be more than a mere scintilla of evidence to debar the court from excluding it. *Brinkley* v. *Wilmington & W. R. Co.*, 35 S. E. 238; *Cogdell* v. *Railroad Co.*, 124 N. C. 302.

"Whether there is any evidence legally tending to prove a fact to authorize its submission to the jury, is to be determined by the court. If the evidence is not sufficient to support a verdict for the plaintiff, or if one if found, must be set aside, the court may direct a finding for the defendant." *Schuerman* v. *Dwelling Co.*, 161 Ill. 437, 52 Am. St. R. 377.

Now, let us look to see whether the plaintiff has adduced enough evidence of negligence on the part of the railroad company to warrant a verdict. The car which was standing on the track, placed there to be loaded with lumber, was a box car hav-

ing a brake at each end. It was on the main track. It cannot be said that it was not lawfully there in the business of the company. The declaration charges that it was left upon a heavy grade. In that mountain country that was inevitable. The said car had just been loaded with lumber and the hands were leaning upon it resting, and one of them was climbing up on the bumper when suddenly a "click" was heard by them, and the car started down the grade. Just what produced that click is not shown; what started the car is not known except by mere surmise. The declaration charges that the brakes were defective; but it is certain that they held the car there during the strain of the loading of the lumber. In the process of loading it became necessary to move the car six feet down the grade, which was done by opening the front brake, and when the brake was closed it stopped the car, so that we do not see any defect thus far. The evidence is against that theory. The only evidence at all tending to show any defect in the brake is from a witness, one witness, Johnson, who examined the car four days after the unfortunate accident, and he says that "the cogwheel was up too high for this lap to catch; you could have by putting your foot on it—it could be set to catch only by putting your foot on the end latch." He said it required a little care only in setting the brake. The car had had its end knocked out by the wreck and had run a number of miles down the grade, and the brake may have been injured thereby. There is no evidence that it was injured before it started down the grade, or that it was defective. The burden to show this clearly was on the plaintiff. It may be that the brake was defective, but it is not shown. No other negligence is attributed to the defendant, except leaving the car on the track, and that was a lawful act. We may guess, surmise, for want of a better explanation, that there was some defect in the brake, but it is only a conjecture, and we want proof. The law calls on the plaintiff for that proof of defendant's negligence. "In an action by the servant against the master for injury from defective machinery or appliances, the burden is on the servant to show that the same was defective." *Humphreys* v. *Newport News Co.,* 33 W. Va. 135. Neither court nor jury can proceed amid uncertainty. Counsel argues as if the same degree of care rests on the master in such a case as this as in the case of a passenger, and that the master must exculpate himself by disproving negligence. By no means. Where a passenger is injured by a railroad accident

there is a *prima facie* presumption of negligence on the part of the railroad company; but in the case of injury to an employee there is no presumption of negligence, but the plaintiff must prove negligence. *Searle* v. *Railway Co.,* 32 W. Va. 370. All the evidence that we have, that is of the hands who loaded the car, I mean-evidence before the accident, tends to show that the brakes were sufficient. A master is not bound to furnish the most approved and safest appliances, nor provide the best methods and means of work for employes; and if the same are in use by him, and can be with reasonable care used with safety it is all that can be required of the employer. *Seldomridge* v. *Railway Co.,* 46 W. Va. 569.

Another essential element for recovery in this case is wanting. "A servant cannot recover for an injury to him from such defective machinery or appliances, unless the master knew or ought to have known of the defect." *Humphreys* v. *Newport News Co.,* 33 W. Va. 135. There is not a bit of evidence to show that the company knew of that defect, if it existed. The defect was so obscure that it was almost a latent defect, not calling on the employer to know of it; but as it might have been discovered, I shall not call it a latent defect. There is no proof of such facts as enable us to say that though the company did not know of the defect, it ought to have known. That car came from another railroad, was a foreign car. How long it had been on this road we do not know. What time or opportunity for inspection we do not know. I shall not say that it was not the duty of a railroad company using foreign cars to inspect them, but I do say that when foreign cars come upon a road it ought to be shown that they were there for a reasonable time and under opportunity to inspect them, and that the railroad company omitted a duty in respect thereto. A railroad company is not bound to make constant inspection, but only at reasonable intervals, and where such inspection is practicable and to make them with ordinary care. 3 Elliott on Railroads, s. 1278. "Where any of the appliances of the business are apparently safe, and the servants using them make no complaint and do not call their attention to any defects therein, it cannot be held responsible for an injury resulting from a defect suddenly appearing, unless it has been remiss in testing the appliance; which can only be said to be the case when its attention has been called thereto, or when it has been in use so long, and under such circumstances, that it is

bound to know that it must in the ordinary course of things have become unsafe." 3 Wood on Railroads, s. 374. A railroad company is not liable for any defect in the original construction of foreign cars, if it made proper provision for inspection. *Thyng v. Fitchburg Co.,* 156 Mass. 13, 32 Am. St. R. 425. The truth is there is no evidence adequate to prove that the brakes were defective, or, if they were, that the defendant knew or had time, reason or opportunity to know of such defect. The unfortunate plaintiff has not been able to prove her case of negligence, but her evidence leaves the case in mist and obscurity. The fact is it was an inevitable accident, whose cause is inscrutable, and the court cannot, therefore, fix liability on the defendant. "The fact that a freight train broke apart when it ought not to have done so is not of itself evidence of negligence on the part of the railroad corporation for which it is answerable to one of its servants, though the rule is otherwise when the person injured is not an employee." *Thyng v. Fitchburg Co.,* last cited. "If no fault or negligence is imputable to either party, a loss must remain where the course of business has placed it, and no cause of action arises thereon. *Lyndonville Bank* v. *Fletcher* 68 Vt. 81, 54 Am. St. R. 874. So I say that this action is unaccounted for as regards its cause, and the calamity, desperate, desolate and unfortunate as it is, must needs go without relief. The unfortunate deceased was engaged in a dangerous business, where accident was liable to befall him any moment, and when it is sought to exempt him from the danger of the risk he assumed by reason of defective appliances, we must have evidence to fix liability, so that we shall not grope in the dark. We cannot bend the law to meet particular cases from motives of sympathy or pity. Finding no error in the action of the circuit court in directing a verdict, we are compelled to affirm the judgment.

                                        *Affirmed.*