# CHARLESTON.

## McCormick v. Southern Express Co.

Submitted October 2, 1917.    Decided October 16, 1917.

1. Process—*Return—Amendment.*

   The rule respecting the right of an officer to amend his return of process, so as to make it conform to facts existing at the time of service and necessary to be stated in the return, is one promotive of justice and is liberally applied by the courts.    (p. 88).

2. Same—*Amended Return—Waiver of Objection.*

   If a defendant appears specially and moves to quash a summons and the return thereon, on the ground that the return is defective, and the court sustains his motion, but permits the sheriff to amend his return, and defendant excepts, but does not renew his motion to quash the return as amended, and pleads to issue, he thereby waives any objection to the amended return.    (p. 88).

3. Carriers—*Interstate Shipment—Loss—Limitation of Liability—Act of Congress.*

   By the act of Congress, March 4, 1915, known as the Cummins Amendment to the Carmack Amendment to the Interstate Commerce Act, a common carrier of an interstate shipment is made liable to the shipper for the full actual loss, damage, or injury to the property, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in the receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission, whether or not the goods are hidden from view by wrapping, boxing, or other means unless, in case they are hidden from view, he requires the shipper to state specifically in writing their value.    (p. 90).

Error to Circuit Court, Jefferson County.

Assumpsit by H. H. McCormick against the Southern Express Company.    Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Forrest W. Brown* and *Forrest A. Brown,* for plaintiff in error.

*Charles N. Campbell,* for defendant in error.

Williams, Judge:

Plaintiff recovered judgment in assumpsit for $300.00, the value of one Dark Cornish Cock which was killed while being transported by defendant company from Warrenton, Virꞏ ginia, to Catonsville, Maryland, and it has brought the case to this court for review of alleged errors.

The first assignment is, that the court erred in allowing plaintiff to have the return of the summons amended, and in holding the service valid. Suit was brought in Jefferson county, West Virginia, and summons was served on D. N. Green, the station agent of defendant at Charles Town, West Virginia, but the return failed to state that he resided in said county. Defendant first appeared specially and moved to quash the summons and return, and the court sustained the motion to quash the return, but not the summons, and granted plaintiff leave to have the return amended. Thereupon the deputy sheriff, who had made the service, appeared in court and testified that said D. N. Green, agent of defendant, resided in Jefferson county, West Virginia. Whereupon the return was amended accordingly, and defendant objected and excepted, but did not renew its motion to quash the return after amendment. It was certainly proper to allow the amendment to be made. The rule respecting the right of an officer to amend his return in order to make it conform to the facts is promotive of justice, and is liberally applied by the courts. 1 Ency. Dig. Va. & W. Va., 356. By not renewing its motion to quash the return, after amendment thereof, and by appearing and pleading to the issue, defendant must be deemed to have waived any objection to the amended return, and we need not determine whether it shows a proper service. The exception taken was only to the action of the court in permitting the amendment, and is not well taken.

Our attention is not directed to any defect in the process itself, and we perceive none. But the court does not appear to have expressly ruled on defendant's motion to quash it.

It is insisted that the court was without jurisdiction, because defendant did not reside in Jefferson county, nor did the cause of action arise therein. Without intimating that a

plea in abatement would have been availing, it might be sufficient reply to this contention to say that none was filed. But there can be no question concerning the court's jurisdiction, whether defendant be a foreign or a domestic corporation, and regardless of its place of residence, or of the place where the cause of action arose. The cause of action being transitory, the action could be brought wherever the process of the court could be properly served upon defendant. The declaration avers the cause of action to be a breach of duty respecting an interstate shipment, and shows it did not arise in West Virginia, but it nowhere appears whether defendant is a domestic or a foreign corporation. But it does appear by the amended return of service that it did business in Jefferson county, for it maintained a local agent in that county. Service upon such agent in the county of his residence was sufficient to give jurisdiction to render a personal judgment against defendant. A foreign corporation coming into another state, by its officers or agents, and there engaging in business, thereby subjects itself to the process of the courts of that state. *Abel* v. *Penn Mutual Life Ins. Co.*, 18 W. Va. 400; *Connecticut Life Ins. Co.* v. *Duerson's Exor.*, 28 Grat. 630; *Humphreys* v. *Newport News & M. V. Co.*, 33 W. Va. 135; *B. & O. R. R. Co.* v. *Harris*, 12 Wall. 65, 20 Law Ed. 354; and 3 Cook on Corp., sec. 755. Sec. 1, ch. 123, Code of West Virginia, provides that a suit may be brought against a corporation in any county "wherein its principal office is, or wherein its mayor, president, or other chief officer resides; or if its principal office be not in this State, and its mayor, president, or other chief officer do not reside therein, wherein it does business."

State and Federal courts have concurrent jurisdiction of suits to enforce liability against an interstate carrier under the Interstate Commerce Act if the amount involved is sufficiently large to give federal jurisdiction, and the state courts have exclusive jurisdiction if the amount claimed is below federal jurisdiction. See cases cited in note on page 9308 of volume 8, U. S. Statutes Annotated.

The demurrer to the declaration was properly overruled. It was not necessary to declare specially on the receipt or

bill of lading; the averment of defendant's undertaking and the breach of it, in general terms, is sufficient. Defendant pleaded the general issue, and also tendered eight special pleas, to the filing of which objection by plaintiff was sustained to all except the seventh. The order does not show what reply, if any, plaintiff made to it, but only that issue was joined on the plea. Neither party demanding a jury, the case was submitted to the court, and it heard the evidence and tried the case, as if there had been a general denial of the plea, and we may properly regard such denial as made.

Special plea No. 7 avers that, at the time the chicken was delivered to defendant's agent, "the same was confined in a closed coop so arranged that the contents of said coop were hidden from view, and said defendant, or its agent, was not notified as to the character of the goods; thereupon the agent of the said defendant requested the shipper to specifically state in writing the value of the goods, which the said shipper in writing fixed at the value of $5.00;" and also, that it "was an interstate shipment and the liability was governed by the act of Congress, provided in such cases; that at the time of said shipment the Interstate Commerce Commission, as required and permitted by law, had established and maintained rates for transportation dependent upon the value of the property shipped as specifically stated in writing by the shipper; and that such rate had been published as other rate schedules and as required by law; and that in accordance with said rates so fixed by law, the said coop with its contents was accepted by the defendant and receipt issued and accepted by the plaintiff at the rate on the valuation of $5.00, which limited the responsibility of said Company to not exceed the sum of $50.00, as will appear by the said receipt."

That it was an interstate shipment is admitted. But the uncontroverted proof of the transaction with defendant's agent respecting the shipment is, that Mr. C. H. Smith, agent for plaintiff, placed the chicken in a box, eighteen by twenty-four inches by eighteen inches in height, covered with slats two or three inches wide and about three-fourths of an

inch to one and one-fourth inches apart, and delivered it to defendant's agent at Warrenton; that before delivery he took the chicken out of the box and weighed him in the presence of the agent to satisfy him that the chicken was in a good healthy condition, and ascertained that he then weighed thirteen and three-fourths pounds. This transaction was had with Mr. Maxheimer, assistant agent, whose testimony was not taken and who died before the trial of the case. But Mr. Smith's testimony is not disputed. He also says Mr. Fletcher, the principal agent, was in his office but not in the immediate presence of himself and Mr. Maxheimer at the time. He further swears he was not requested by the agent to place a value upon the chicken and did not value him. The charges paid were according to the regular published schedule of rates for live freight not exceeding 100 pounds weight and $50.00 in value, approved by the Interstate Commerce Commission.

Defendant's liability must be determined by the act of Congress, March 4, 1915, known as the Cummins Amendment to the Carmack Amendment to the Interstate Commerce Act.

Having received the chicken at Warrenton, Virginia, to be transported to Catonsville, Maryland, and it being proven that it was killed in transit, the presumption is that it was the result of the negligence of defendant's servants, and there is no attempt to rebut this presumption. The statute cited makes it liable, and entitled plaintiff to recover ''for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made

is hereby declared to be unlawful and void: *Provided, how-ever,* That if the goods are hidden from view by wrapping, boxing, or other means, and the carrier is not notified as to the character of the goods, the carrier may require the ship-per to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated, in which case the Interstate Commerce Commission may establish and maintain rates for transpor-tation, dependent upon the value of the property shipped as specifically stated in writing by the shipper.'' The right given the carrier by this provision obtains only when the goods to be transported are hidden from view by wrapping, boxing, or other means, and the carrier is not notified as to their character. In this case the chicken was not hidden from view, but was placed in a box covered with open slats and, before he was received by defendant, was taken out of the box and weighed in the presence of defendant's agent. But it is insisted that the qualities which gave extra-ordinary value to the chicken were not known to the de-fendant's agent, even though he was not hidden from his view, that he was not known to be a thorobred bird of great value; and that the term ''character'' as used in the statute, embraces value. This would be to interpret the statute as if it read: ''if the goods are hidden from view by any means, or if the value thereof is not known to the shipper,'' etc. It is not necessary, for the purpose of this case, to determine what is the proper interpretation of the statute in that re-spect, as the uncontroverted proof is, that defendant made no request of the shipper to specifically state in writing the value of the chicken, and, therefore, is not in a position to claim the benefit of said provision, because it made no re-quest of the shipper to specify the value in writing. The right extended to the carrier to limit its liability must be exercised in the manner prescribed.

The chicken was proven to be an imported Dark Cornish Game Cock of fine breed and of great value. In view of the evidence the verdict is not excessive. Finding no error in the judgment, we will affirm it.

*Affirmed.*