DRAYTON HILLYER & others *vs.* MARY W. DICKINSON & another.

Worcester.    October 1, 1891. — October 24, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Promissory Note — Fraudulent Representations — Burden of Proof — Evidence.*

A party having the burden of proof cannot retain a verdict in his favor by pointing to a mere scintilla of evidence, when, upon an examination of the whole case, the court does not find substantial evidence to support it; and the court, if it can find no evidence entitled to be weighed, must say so, and the jury should be instructed that the burden of proof is not supported.

In an action upon a promissory note, on the issue whether the defendant intro-
duced any evidence proper to be submitted to the jury, to support an averment
in his answer that the note was procured by the plaintiff's misrepresentations
and fraud, it was *held*, upon a report of all the material evidence in the case
contained in a bill of exceptions, that there was no evidence for the jury that
the plaintiff made such representations except upon information from a third
person; and that the jury should have been so instructed.

CONTRACT, brought by Drayton Hillyer, Henry C. Dwight,
and William C. Skinner, doing business as Dwight, Skinner, and
Company, upon a promissory note for $32,150.46, dated March
26, 1889, payable to the order of that firm and signed by the
defendants, Mary W. Dickinson and George Stuart Dickinson.
At the trial in the Superior Court, before *Aldrich*, J., the de-
fences relied on were, (1) that the defendants were induced to
give the note by the fraudulent representations of the plaintiffs
that the indebtedness of Samuel F. Dickinson, the son and brother
of the defendants respectively, who was in financial straits, was
insignificant beyond what was due to their firm and covered by
the note, and that the giving of the note by the defendants would
substantially relieve him from his embarrassment and enable him
easily to resume business, whereas Samuel F. Dickinson at the
time owed from $65,000 to $75,000, and was hopelessly insol-
vent; (2) that the plaintiffs at the same time, and as part of
the same transaction, promised to take back certain wool sold by
them to Samuel F. Dickinson for use in his business, which was
still on hand and unmanufactured, and thereby reduce the amount
which would be due to their firm from the defendants upon the
note, but that the plaintiffs did not intend to take back such
wool, and intended at the time not to fulfil their promise.

The judge refused to rule, as requested by the plaintiffs, that
there was no evidence for the jury upon these issues, and sub-
mitted the case to them.

The jury returned a verdict for the defendants, based upon
the first issue; and the plaintiff alleged exceptions. The nature
of the evidence appears in the opinion.

*F. P. Goulding & W. S. B. Hopkins*, for the plaintiffs.

*G. F. Hoar*, (*E. B. Stoddard* with him,) for the defendants.

ALLEN, J. The view no longer prevails that a party who
has the burden of proof can retain a verdict in his favor by
pointing to a mere scintilla of evidence, when, on an examina-

tion of the whole case, the court can find no substantial evidence to support it. It is not necessary, perhaps not possible, to lay down a precise formula of general application by which to determine whether the evidence in particular cases is sufficient or not. Where there is evidence proper to be weighed, the jury is the proper tribunal to weigh it, subject nevertheless to the power in the court to set the verdict aside as against the weight of evidence. But where the court can find no evidence which, in its deliberate and ultimate judgment, is entitled to be weighed, it must say so, and the jury should be instructed in terms that there is no evidence to support the burden of proof which rests upon the party. Evidence which merely raises a suspicion, or a surmise, or a conjecture, is not enough to be entitled to be submitted to the jury. *Chase* v. *Breed*, 5 Gray, 440. *Fay* v. *Alliance Ins. Co.* 16 Gray, 455, 461. *Denny* v. *Williams*, 5 Allen, 1. *Commonwealth* v. *Fitchburg Railroad*, 10 Allen, 189. *Butterfield* v. *Western Railroad*, 10 Allen, 532. *Brightman* v. *Eddy*, 97 Mass. 478, 481. *Markey* v. *Mutual Benefit Ins. Co.* 103 Mass. 78, 87. *Brooks* v. *Somerville*, 106 Mass. 271, 275. *King* v. *Nichols*, 138 Mass. 18. *Carter* v. *Goff*, 141 Mass. 123. *McCreary* v. *Boston & Maine Railroad*, 153 Mass. 300.

The question whether there is evidence which should properly be submitted to the jury is sometimes a very nice one, since the court is not at that stage of the proceedings to pass upon the weight of the evidence, but only to determine whether there is any evidence sufficient to go to the jury. *Forsyth* v. *Hooper*, 11 Allen, 419. *Smith* v. *Collins*, 115 Mass. 388, 398. *Heywood* v. *Stiles*, 124 Mass. 275. *Coolidge* v. *Smith*, 129 Mass. 554. *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1.

In the present case, we have been called on to consider whether the defendants introduced any evidence, proper to be submitted to the jury, to support their averment that the note in suit was procured by misrepresentations and fraud in respect to the amount of the indebtedness of Samuel F. Dickinson; or whether they introduced any such evidence of fraud on the part of the plaintiffs in promising to take back the wool which they had sold to Dickinson, and which still remained on hand as a part of his property. It is conceded that the burden of proof was on the defendants.

On both of these points, the whole of the material evidence is reported in the bill of exceptions, and an examination of it has led us to the conclusion that the plaintiffs were entitled to the instructions which they requested, that there was no evidence in the case tending to show that they made any representations to the defendants regarding the indebtedness of Dickinson, except upon information; and also, that there was error in submitting to the jury any question of fraud on the part of the plaintiffs in respect to their promise to take back the wool.

The only interviews at which any representations were made were between Mr. Skinner, one of the plaintiffs, and Mr. Kellogg, agent for the plaintiffs, on the one hand, and the defendants on the other hand; Mr. Currier, a friend and witness of the defendants, having also been present at one of the interviews. The material thing to be considered at the trial was whether Skinner and Kellogg made any representations as to the amount of the indebtedness of Samuel F. Dickinson, as of their own knowledge. The jury were instructed, in substance, that if they made positive statements, as of their own knowledge, that his indebtedness did not exceed a certain sum, and if these statements were untrue, and were intended to deceive and did deceive the defendants, who were thereby induced to sign the note, then the fraud would be a defence to the note; but if they made no such statement as of their own knowledge, then this ground of defence would fail.

It is not necessary to repeat here the whole testimony in detail; but that in reference to these representations is as follows.

Mrs. Dickinson, one of the defendants, having testified that at the first interview she met Mr. Kellogg and Mr. Skinner with her son Stuart (the other defendant) by appointment, proceeded to say: " One of the gentlemen had a proposition to make to her. He said that they were her son's largest creditors, and that her son owed them about $32,000, and that he was only owing, as far as they could find out — that Mr. Smith had told them — only five or six thousand more, — might be $40,000 in all. The other creditors were only small creditors, amounting to five or six thousand dollars, in all perhaps it might amount to $40,000, they didn't, Mr. Smith didn't know, — they had no books. . . . The next morning they met by appointment, and Mr. Currier,

a gentleman related by marriage to the Dickinson family, came in.   They repeated before Mr. Currier the same statement, that Samuel F. Dickinson owed them $32,000 for wool, and smaller creditors, which amounted to $5,000 or $6,000 more.   Mr. Currier thought it over a minute and said, 'If that is the case, I see no reason why you should not sign that note.' . . . She further testified that she was induced to sign the note in controversy upon their statement of the indebtedness of her son, and that otherwise she should not have signed it.

" In cross-examination, . . . in regard to conversation with Messrs. Skinner and Kellogg at the first interview in the evening, she testified that they said that they were the largest creditors, and that ' they had been to the mill and found how much, as they supposed, he was owing, and that they were the largest creditors.'   They said Smith had told them that Samuel F. Dickinson was owing them $32,000 for wool, or a little more. The others were smaller sums. . . . She further testified, in regard to conversation in morning interview, . . . they said Sam was owing about $32,000 ; he was owing other parties only small sums, amounting to five or six thousand, and perhaps it might amount to forty thousand.   They said Smith told them ; this was as near as they could get it from what Smith told them."

This was all of Mrs. Dickinson's testimony upon the subject. Mr. Smith, above referred to, was employed by Samuel F. Dickinson in his business, to keep the books and to attend to other duties.

George Stuart Dickinson, the other defendant, testified on this subject as follows :

" That he first saw Mr. Kellogg at his mother's house on Monday, March 25, and that Mr. Kellogg stated that Samuel F. Dickinson was indebted to his firm, and proposed that a settlement should be made, and that in consequence of this conversation an appointment was made for that evening. . . . That at the interview in the evening, Mr. Skinner said that, as S. F. Dickinson was not present, he had this proposition to offer: that they were Sam's largest creditors; that Sam owed them about $32,000, and that Mr. Smith had informed them that he was owing only smaller amounts, — owing besides them debts amounting to about five or six thousand dollars. . . . I think Mr. Skinner

said, as long as they were the largest creditors, and the other creditors were so small, it would not make any trouble at all, and the whole matter could be hushed up. . . .

" In regard to the interview the next morning, at which Mr. Currier was present, he testified that Mr. Skinner repeated his proposition, . . . that he stated indebtedness, — that S. F. Dickinson owed Dwight, Skinner, & Co. [the plaintiffs] to the amount of $32,000, and that Mr. Smith had told him that he only ' owed smaller bills of about five or six thousand dollars besides them, the most amounting to $40,000 only.' He made this statement to Mr. Currier, and Mr. Currier looked over the papers which they had brought. After Mr. Currier looked them over, he said, ' Well, if matters stand as Mr. Skinner represents, it will be the best thing for us to do so, and sign the note and hush the matter up.' . . . Further testified that he was induced to sign the note by the statement that Mr. Currier and Colonel Skinner made in regard to Samuel's indebtedness, and would not otherwise have signed it. . . .

" In cross-examination . . . in regard to the conversation at the preliminary meeting with Mr. Kellogg, in the afternoon of Monday, which resulted in the evening appointment, he testified that Mr. Kellogg said that ' Sam owed a very large amount, — about $50,000 '; and he wanted to know if we were willing to assume Sam's indebtedness then, and take his share of the property to cover us. . . . Said that at the evening interview. Mr. Skinner said that ' they were the largest creditors of Sam ; they had been to the mill, and Smith had said Sam owed only five or six thousand dollars besides the amount he owed them.' . . . Mrs. Dickinson wanted to know what the other creditors would say, and Mr. Skinner replied that the other creditors were so small, in fact there were no other creditors, as they were so small they would not make any objection, and said we could take care of them easily enough. In regard to the meeting Tuesday morning, he testified that Mr. Skinner repeated his proposition of the night before, and stated that Sam only owed them $32,000, ' and, on authority, only five or six thousand more.' "

Mr. Currier was also called by the defendants, and testified upon this subject as follows, referring to the interview in the morning : " Then I asked Mr. Kellogg if he had looked over

the books or knew anything what or about the debts of Samuel, what they were. He replied, I think, that he had not looked over the books very particularly, but Mr. Smith had told him the debts were only a few thousand dollars over his indebtedness to them. I said, Will the amount exceed $40,000? and he said he thought not. Then I looked the matter over, and says, ' Well, if the debts don't exceed $40,000, I don't know but it would be a good plan for you to sign this, Mrs. Dickinson.' . . . In his cross examination he again stated that they said that Smith had told them the debts were only a few thousand above theirs."

Mr. Skinner and` Mr. Kellogg were witnesses for the plaintiffs, and there was nothing in the testimony of either going to show that they made any representations, as of their own knowledge, as to the indebtedness of Samuel F. Dickinson; indeed, they denied having made any representations at all. But on the bill of exceptions the defendants are entitled to have it assumed that the jury believed the testimony which they introduced. We therefore take the testimony introduced by the defendants, as it stands reported in the bill of exceptions; and we cannot see that on any just construction it purports to assert that Mr. Skinner or Mr. Kellogg made any representations as to the indebtedness of Dickinson to other creditors, as of the personal knowledge of either of them ; but, on the other hand, it purports to give statements as to such indebtedness made on the authority of Smith. It is true, the reference to Smith is not repeated in every sentence. But it seems to us that, according to the testimony introduced by the defendants, the references to him were sufficient to show that whatever was said as to indebtedness to other creditors rested on his authority, and that the defendants must have so understood it.

It is urged on behalf of the defendants, that the jury might properly have rejected so much of the testimony of their witnesses as asserted that the statements were made by Skinner and Kellogg on the authority of Smith, and have found that the statements were made on their own authority; but the crucial question as submitted to the jury in the case was, whether they made the statements on their own authority and as of their own knowledge ; and upon reading the testimony of the witnesses, it

seems to us that it not only does not support that theory; it contradicts it.

In respect to the plaintiff's promise to take back the wool, it was left to the jury to determine whether they made that promise intending at the time not to fulfil it. There was no evidence to sustain such a ground of defence. It is not contended in the argument for the defendants that there was; but it is urged that the plaintiffs were not hurt by this proceeding, and that the whole matter has become immaterial because the verdict of the jury rested solely on the first ground. The plaintiffs, on the other hand, contend that it was an injury to them to submit to the jury this question of fraud as though there was evidence to support it, even though the verdict for the defendants was placed on the other ground. Since this question is not likely to arise upon the new trial, it is unnecessary for us to determine it.                                  *Exceptions sustained.*