### BOLES v. ALDRIDGE et al.

(Court of Civil Appeals of Texas. Texarkana. Nov. 30, 1912. On Motion for Rehearing, Jan. 30, 1913.)

**1. VENDOR AND PURCHASER (§ 33*)—RESCISSION—FRAUD—REPRESENTATIONS ON INFORMATION.**

A vendor, who makes a representation on information received from others, is not guilty of fraud, though the representation is false, if he informs the purchaser that he does not make the same as of his own knowledge, and if he does not know that the information is false or that his informant is unreliable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66; Dec. Dig. § 33.*]

*On Motion for Rehearing.*

**2. VENDOR AND PURCHASER (§ 44*)—ACTION TO RESCIND—FRAUD.**

Evidence, in an action for rescission of an exchange of lands, *held* not sufficient to support a finding that defendant had intentionally practiced a fraud upon plaintiff.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

**3. VENDOR AND PURCHASER (§ 36*)—RIGHT TO RESCIND—FRAUD.**

Although defendant was not guilty of intentional wrong, plaintiff may rescind if he was induced to convey land in reliance on false representations as to the character of the land conveyed to him by the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 40, 52, 53; Dec. Dig. § 36.*]

**4. VENDOR AND PURCHASER (§ 36*)—RESCISSION—FRAUD—MISREPRESENTATION OR MATTERS OF OPINION.**

Although defendant's statements, made on information by reliable parties, that the land he was conveying to plaintiff was good, smooth land, was fenced, and had a well, windmill, and tank upon it, were false in fact, they were, when made in connection with statements based on information, mere expressions of defendant's opinion not affording a ground for rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 40, 52, 53; Dec. Dig. § 36.*]

**5. EXCHANGE OF PROPERTY (§ 5*)—CONDITION OF CONTRACT—INDEPENDENT STIPULATION.**

Where a vendor knew nothing about land personally, and the purchaser, knowing that if he relied only upon the vendor's opinion as to its character he would not be entitled to rescind the contract, took the vendor's guaranty that if the land was not as represented he would make it come up to such representations, meaning thereby that if the land was not as represented he would pay a sum representing the difference between the value as represented and its actual value, the contract between the parties was that there should be no rescission if the land was not as represented, but that the purchaser would be indemnified under the guaranty.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 6, 8–10; Dec. Dig. § 5.*]

**6. LIENS (§ 15*)—INCUMBRANCES—LIABILITY OF SUBSEQUENT PURCHASER.**

A purchaser of land who has assumed payment of incumbrances thereof cannot, without the consent of the owner of such incumbrances, be relieved of liability therefor.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 20; Dec. Dig. § 15.*]

**7. EXCHANGE OF PROPERTY (§ 5*)—RESCISSION OF PURCHASER—CONDITION PRECEDENT—PLACING PARTIES IN SAME POSITION.**

Where plaintiff conveyed land to defendant, who assumed the payment of liens on the land, a rescission at the instance of plaintiff should be denied, since, as such liability of defendant would continue unless the incumbrancers released him from liability, the parties could not be placed in statu quo.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 6, 8–10; Dec. Dig. § 5.*]

Appeal from District Court, Cooke County; Clem B. Potter, Judge.

Action by James G. Boles against G. W. Aldridge and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. R. Bell and Davis & Davis, all of Gainesville, for appellant. Stuart & Bell and Potter, Culp & Culp, all of Gainesville, for appellees.

WILLSON, C. J. Appellant owned certain town lots and 200 acres of land in Cooke county, and appellee owned 640 acres in Reagan county. Appellant's land was incumbered by liens to secure debts amounting to $6,000, and appellee's was incumbered by a lien to secure a debt of $4,600. They agreed to exchange their respective properties; appellant undertaking in consideration of the conveyance to him of the Reagan county land to pay the debt against same, and appellee undertaking in consideration of the conveyance to him of the lots and Cooke county land to pay the debts against the latter, and in addition thereto to pay to appellant $200 in cash and make and deliver to him his two promissory notes for $750 each. The exchange was consummated as agreed upon. On the ground that he was induced to make the contract by false representations made to him by appellee as to the character of the Reagan county land and as to improvements on it, appellant sought by this suit to rescind the exchange he had made. The court below instructed the jury to find for appellee, and on such a finding rendered judgment that appellant take nothing by his suit. The complaint, and the only complaint, made

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

here, is that the court erred in so instructing the jury.

In his petition appellant alleged that on March 15, 1911, the date of his deed conveying the lots and Cooke county land to appellee, and prior thereto, the latter, "professing to be familiar with its quality and condition, as well as the improvements thereon," represented to him that the Reagan county land was "all good, smooth land, fenced with three wires and cedar posts, and that a windmill, well, and tank were on said section of land on November 10, 1910, and were still there." He then alleged that the representations were untrue; "there being no windmill, well, or tank on said section on November 10, 1910, or subsequent to said time, and said land being uneven and broken, largely occupied by ridges, gulches, and ravines." The testimony was sufficient to support a finding that there never was a windmill, well, or tank on the land, that it was uneven and broken, and fenced on only three sides. It appeared from uncontradicted testimony that at the time the exchange was made neither appellant nor appellee had ever seen the Reagan county land. Appellant was the only witness who testified as to the representations made by appellee to induce him to make the exchange. On his direct examination he testified that appellee told him that the Reagan county land was "all good, smooth land," "was fenced, and had a well, windmill, and tank on it." He further testified that appellee told him that he (appellee) "had never been on the land himself, but he knew the parties that had been on it, that they were perfectly reliable, and he would guarantee what they told him." On his cross-examination, with reference to the representations made to him by appellee, appellant testified: "He told me he had never seen it. * * * He told me it had been described to him. He didn't show me any letters that he had describing it. He just told me what kind of land it was, and he said he knew the people that told him what kind of land it was, and he knew they were reliable men and that he thought the land was as represented. Probably he told me who the people were, but I have forgotten the names if he did. He had a description of the land on his books, I think, and possibly he showed it to me; it might have been a letter. I depended on the description he gave me. I supposed he knew something about the land or he would not have represented it to me. I knew he had never seen it, but he had perfect confidence in the parties. I saw a description of the land. I don't know whether it was in a letter or a book. I bought this land without seeing it, and bought it from a man that I knew hadn't seen it. * * * I demanded a written guaranty because I traded for the land without seeing it. Yes, sir; I traded with a man that had never seen it, and, as neither he nor I knew whether the statements were good or not, I wanted him to guarantee them. * * * I made the trade really on Mr. Aldridge's guaranty; that is what I relied on. I would never have traded for the land if he had not given me this written guaranty." The written guaranty referred to was as follows:

"The State of Texas, County of Cooke.

"I, George W. Aldridge, grantee in a deed executed by James G. Boles and wife to G. W. Aldridge and wife, M. E. Aldridge, dated March 15, 1911, to 200 acres of land in Cooke county, Texas, out of the John Barnett survey, do hereby state that as part consideration for said 200 acres of land I have traded to said James G. Boles section No. 69, block No. 1, abstract No. 505, patented to Texas & Pacific R. R. Co., in Reagan county, Texas, and in order to make said trade with said Boles I represented that said 640 acres of land was located about twelve miles south of Styles, in Reagan county, Texas, and was all good, smooth land, fenced with three wire and cedar posts, and a windmill, well and tank was on said section of land on November 10, 1910, and further as consideration for said trade I guaranteed and warranted said land to be so improved at said time and of such character and quality of land, and agreed to make same come up to my said representations if same was not as represented by me. Also, as consideration for said trade, I give to said Boles option and privilege to sell the north 100 acres of said 200 acres of land for one year at sixty dollars per acre, and allow him $750 in event he makes a sale of north 100 acres at said price, or at a greater price, within twelve months, and in the event that G. W. Aldridge disposes of and sells said north 100 acres within one year at $60 per acre, or more, then in that event, said Aldridge is to pay said Boles $500. Witness my hand this March 15, 1911, at Myra, Texas.

"G. W. Aldridge.

"Witnesses: H. R. Jones."

[1] It will be noted that the suit was not on the guaranty evidenced by the instrument set out above, and further that the relief prayed for was not sought on the ground of mistake as to the character of the Reagan county land and improvements thereon, but was sought on the ground of fraud on the part of appellee, in that he misrepresented the character thereof. It also will be noted that while appellee represented the land to be good, smooth land, fenced, and as having a windmill, well, and tank on it, he at the same time informed appellant that he had never been on or seen it, and that his representations as to it and the improvements on it were based on information he had from parties then named by him, who had been on it. The case seems to be within the rule that a person who makes a representation on information received from others is not to be held to be guilty of fraud, though the representation is false, if he informs the

other party that he does not make the same as of his own knowledge, and if he does not know the information is false, or that his informant is unreliable. 14 A. & E. Ency. Law (2d Ed.) pp. 118 and 102. There is nothing in the record tending to show that appellee knew, or had any reason to believe, that the information he had as to the land and improvements was false, or that the parties who furnished same to him were not reliable. In Davidson v. Jordan, 47 Cal. 351, the defendant sought to avoid a recovery on a promissory note he had made in payment of an interest purchased by him in a mine, on the ground that he had been induced by the false and fraudulent representations of one Frank, the plaintiff's assignor, to make it. In reversing a judgment in favor of the defendant the court said: "It appears from the testimony of the defendant that Frank, in representing the value of the mine, the amount and value of the ore extracted and on hand, the supply of water and abundance of wood for the working of the mine, and other matters affecting the value of the mine, spoke upon information received from other persons; that he gave the defendant the names of the persons who had communicated the information to him; and that those persons, in conversation with the defendant, corroborated all the statements made by Frank. Frank did not profess to have seen the mine, or to have any personal knowledge of its value, or of any of the matters in respect to which the false representations are alleged to have been made; but he merely communicated the information he had from others, and so stated to the defendant. Representations made in that manner cannot be said to be false or fraudulent unless Frank knew or had reason to believe them to be untrue, and there is no evidence in the case inculpating him in that respect." In Moore v. Scott, 47 Neb. 346, 66 N. W. 441, Scott had assigned to Moore his rights under a contract for the purchase of a tract of land. Moore sued to rescind the contract on the ground that Scott had induced him to enter into it by false representations in regard to the character of the land. It appeared from the testimony heard that Scott in the transaction with Moore had· disclaimed personal knowledge of the character of the land, but had told Moore that certain persons, whom he deemed reliable, had made statements in regard to the land substantially similar to those which Moore charged him with making. In affirming a judgment in favor of Scott, the Supreme Court of Nebraska said: "The fact represented was that persons whom the defendant deemed reliable so represented the land to him. The defendant did not represent these matters in regard to the character of the land as facts within his knowledge, but he affirmatively disclaimed all knowledge in relation thereto." The two cases stated sufficiently illustrate the principle which we think must be held to control in the disposition of this appeal. Cooper v. Lovering, 106 Mass. 77, Hillyer v. Dickinson, 154 Mass. 502, 28 N. E. 905, and English v. Grinstead, 12 Wash. 670, 42 Pac. 121, may be cited as further illustrating it.

The judgment is affirmed.

### On Motion for Rehearing.

[2-5] The trade between appellant and appellee was agreed upon in November, 1910, but the deed from appellee to appellant conveying the Reagan county land was not made until the December following, and the deed from appellant to appellee conveying the Cooke county land was not made until March, 1911. Appellant took no steps to ascertain anything about the Reagan county land until after he had conveyed the Cooke county land to appellant. He then ascertained by going to the land that it was not all good, smooth land, that it was not fenced on its west side, and that it did not have either a well, windmill, or tank on it. Thereupon he wrote appellee, complaining that the land, etc., was not as he had represented same to be, and afterwards called upon appellee to talk with him about the matter. In the motion appellant calls attention to his testimony as a witness, as follows, as to what then occurred: "When I got there I asked him if he got my letter, and he said yes, and he wrote me an answer and sent it to my attorneys, and his attorney had forbid him talking to me with regard to the land, and I told him then that the land was not as represented, and that for his own protection he ought to go back on the man he traded with, and I offered to go with him to his lawyer, and he wouldn't do it, and I offered to take him out to the land and if it wasn't as represented I would pay all expenses. He said that wasn't his lookout." It is insisted that the testimony quoted shows that appellee, when advised by appellant that the land was not as he had represented it to be, refused to talk about it, declaring it "wasn't his lookout," and that his conduct in this respect, and failure to testify as a witness and disclose the source of the information he claimed to have had as to the character of the land and improvements on it, would have warranted a finding that he had "intentionally practiced a fraud upon the appellant." It is further insisted that this view of the case is strengthened by the testimony of several witnesses who lived near the land, showing conclusively that it was not *all* good, smooth land, and did not have either a well, windmill, or tank on it; the argument being that appellee could not have been informed by *reliable* parties, as he claimed he had been, that the land was as he represented it to be, when the truth was that it was not all good, smooth land, and did not have a well, windmill, or tank on it. But for other testimony which should be considered in connection with that appellant

refers to, we would agree with him in the contention he makes. The land in Reagan county conveyed to appellant was known as section 69. Its west line was the east line of section 70, which adjoined it on the east. The two sections were fenced together. There was a division fence between them, but, instead of being on the boundary line between them, it was on section 70, from 50 to 100 yards west of said boundary line. On that part of section 70 lying between said division fence and said boundary line was a well, windmill, and tank. Witnesses for appellant testified that the land was "comparatively smooth," that it "would not be termed rough land," and appellant himself testified that 60 per cent. of it was smooth land. This testimony we think indicates that appellee could very well have been informed by *reliable* men, as he claimed he had been, that the land was good, smooth land, and had a well, windmill, and tank on it. From the existence and position of the division fence such men might in good faith have concluded that the well, windmill, and tank were on section 69, and that all the land was good, smooth land, as 60 per cent. of it in fact was. Moreover, appellant. testified that appellee "probably told him who the people were" that furnished him the information about the land, and stated to him that he "would get the depositions of other parties" showing the character, etc., thereof, "and," he testified, "it seems like he did." It would seem therefore that appellee not only did not refuse to disclose the source of his information as to the land, but, on the contrary, advised appellant thereof. And from other portions of appellant's testimony as a witness than that referred to in his motion, it appears that he had commenced his suit against appellee at the time he testified appellee refused to talk with him; and it further appears that appellee did then talk with him about the controversy, for appellant further testified as follows: "He (appellee) just told me that you lawyers didn't allow him to talk to me about it, but that if it wasn't all right he would make it good; if that land and improvements wasn't all right he would make it good." In view of the testimony referred to, we think the jury would not have been authorized to infer, from the testimony appellant calls attention to, that appellee had not been informed by reliable parties that the land, etc., was as he had represented same to be, and therefore are of the opinion the testimony as a whole was not sufficient to support a finding that appellee had "intentionally practiced a fraud upon appellant." However, we do not understand the law to be that appellee must have been guilty of an intentional wrong to entitle appellant to relief by rescission. On the contrary, we understand the rule to be that he was entitled to such relief if he was induced to convey the Cooke county land to appellee in re-

liance on a false representation made by appellee as to the character, etc., of the Reagan county land, notwithstanding appellee at the time he made it believed the representation to be true and was innocent of any intention to do wrong. But the false representation must not have been as to a mere matter of opinion. If the conclusion reached that the testimony was not sufficient to support a finding that appellee had not been informed by reliable parties that the Reagan county land was as he had represented it to appellant to be is correct, then we are of the opinion that the remainder of the representation was the mere expression by appellee of an opinion, and was so understood to be by appellant. Appellant testified he had engaged in the real estate business during a number of years, and, continuing, said: "He (appellee) told me that he knew nothing about it (the Reagan county land) himself personally, never had been on it, but he guaranteed it. * * * I made the trade really on Mr. Aldridge's guaranty; that is what I relied on. I would never have traded for the land if he had not given me this written guaranty." This testimony, other testimony hereinbefore referred to, and that set out in the opinion of the court heretofore filed, we think, showed conclusively that appellee's statement as to the character of the Reagan county land and the improvements on it was a mere expression of his opinion based on information obtained from other parties, and was treated as such by appellee. Because he knew nothing about the land, knew appellee knew nothing about it, and knew if he relied on appellee's opinion merely as to its character, etc., he would not be entitled to rescind the contract he was then about to enter into, appellant, no doubt, demanded the written guaranty he referred to. That guaranty was that if the land was not as appellee had represented it to be he would "make same come up to" his representations. This, we think, meant that, if it should turn out that the land was not as represented, appellee was to pay appellant in money a sum representing the difference between the value thereof if same had been as represented and its value as it really was. In other words, we think the contract between the parties in effect was that there should not be a rescission if the Reagan county land proved to be different from what they thought it was, but, instead, that appellant should be indemnified by appellee in money against any damage he might suffer because it was not as they believed it to be.

[6, 7] From testimony of appellant as a witness and recitals in his deed conveying the Cooke county land to appellee, it appeared that the latter as a part of the consideration for the conveyance to him assumed the payment of indebtedness of the former to third parties amounting to $6,000, secured by liens on the land. In his answer appellee alleged that he had paid to third parties $2,185 on

account of "incumbrances on the land." The incumbrances referred to are not further described, but they probably were a part of those he had assumed to pay. In a supplemental petition appellant denied that appellee had paid anything to third parties on account of incumbrances on the land, averred, however, if he had, that the payment was a voluntary one on his part, but asserted, nevertheless, a willingness on his (appellant's) part to repay to him any sum he had paid on account of such incumbrances. Appellant in his pleadings alleged no facts showing appellee in any way to have been relieved of the obligation he had assumed to pay his indebtedness to third parties, and appellee in his pleadings said nothing about the obligation he had so assumed, unless the allegation about his payment of $2,185 on account of incumbrances on the land, mentioned above, referred to same. Neither party offered any testimony in regard to this feature of the case. In this attitude of the record, we are of the opinion that the judgment of the court below should have been affirmed, if for no other reason, because it did not appear, if a rescission had been decreed, the parties could have been placed in the position they were in before the contract was executed, but, instead, appeared that if a rescission had been decreed and the title to the Cooke county land revested in appellant, appellee still would have been liable to the third parties for the indebtedness of appellant to them which he had assumed to pay. This view of the case is based on the ruling in Hill v. Hoeldtke (Sup.) 142 S. W. 871, 40 L. R. A. (N. S.) 672, affirming Hoeldtke v. Horstman, 128 S. W. 642, according to which appellee could not, without the consent of the owners of the indebtedness he had assumed to pay, have been relieved of liability therefor. There was no testimony showing such consent, and no offer by appellant to indemnify appellee against his liability to the owners of the indebtedness.

The motion is overruled.