### ZAVALA LAND & WATER CO. v. TOLBERT. (No. 7425.)*

(Court of Civil Appeals of Texas. Dallas. Feb. 19, 1916. Rehearing Denied March 25, 1916.)

1. EVIDENCE ☞461(1) — PAROL EVIDENCE — INTENT OF PARTIES.

In an action for damages for defendant's breach of contract, where it sold land which had to be irrigated, under a contract providing for the drilling of a well and guaranteeing water, evidence that at the time of signing defendant's principal agent explained that the well would produce sufficient water for irrigation is admissible; the expression in the contract being equivocal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2129; Dec. Dig. ☞461(1).]

2. EVIDENCE ☞450(8)— PAROL EVIDENCE — CONTRACT OF SALE.

In such case, the fact that the contract was first signed by another agent does not render inadmissible the declaration by the principal agent, where until he signed it the contract was not binding.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2073, 2074; Dec. Dig. ☞450(8).]

3. APPEAL AND ERROR ☞1051(1)—REVIEW—HARMLESS ERROR.

In such case, where there was abundant other evidence to establish that the expression "guaranteeing water" meant sufficient water for irrigation purposes, the erroneous admission of evidence of the declarations of such agent was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166; Dec. Dig. ☞1051(1).]

4. TRIAL ☞352(5)—SPECIAL ISSUES—STATEMENT.

In an action for damages for misrepresentation in effecting a sale of land, where the written contract provided for the drilling of a well and contained a guaranty of water by the vendor, the submission in a single special issue as to what purpose and what extent water was guaranteed was not erroneous as including two separate questions, it being plaintiff's contention that sufficient water for irrigation purposes was guaranteed, for the questions if separated were so closely related that one could not be well determined without the other.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 841; Dec. Dig. ☞352(5).]

**5. APPEAL AND ERROR ⚖═1001(1)—REVIEW—FINDING.**

Where there is evidence in support of the verdict, it will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928–3933; Dec. Dig. ⚖═1001(1).]

**6. FRAUD ⚖═58(4)—RELIANCE ON REPRESENTATIONS—EVIDENCE.**

In an action for damages for misrepresentations in effecting a sale of land, evidence *held* to warrant a finding that the purchaser did not rely on his independent investigations but upon the representations.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 59; Dec. Dig. ⚖═58(4).]

**7. FRAUD ⚖═13(2)—BELIEF IN MISREPRESENTATIONS.**

That defendant's agent in effecting a sale of land honestly believed a well drilled would produce sufficient water to irrigate the land will not prevent plaintiff from recovering damages for the false representation.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 4; Dec. Dig. ⚖═13(2).]

**8. VENDOR AND PURCHASER ⚖═352 — CONTRACTS—JURY QUESTION.**

Whether a vendor delivered a deed within a reasonable time, the contract fixing no time, is a question of fact for the jury.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 1059; Dec. Dig. ⚖═352.]

**9. FRAUD ⚖═66—ACTION—EVIDENCE—SUFFICIENCY.**

In an action for misrepresentations in effecting a sale of land, finding by the jury as to the actual value of the land *held* warranted under the evidence, though not in accordance with the exact estimates of the parties.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 75; Dec. Dig. ⚖═66.]

**10. APPEAL AND ERROR ⚖═1033(9)—REVIEW—HARMLESS ERROR.**

In an action for misrepresentations in effecting a sale of land which plaintiff later resold, where the damages allowed were less than those fixed by the jury and did not exceed the value of plaintiff's improvements and the difference between the contract price and the price at which plaintiff disposed of the land, defendant could not complain that the jury assessed the land at a value less than its actual value.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4061; Dec. Dig. ⚖═1033(9).]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by R. L. Tolbert against the Zavala Land & Water Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Dinsmore, McMahan & Dinsmore, of Greenville, for appellant. Thompson & Thompson, of Greenville, for appellee.

TALBOT, J. This is the second appeal in this case. See 165 S. W. 28. Appellant, about the year 1909, acquired about 100,000 acres of land in Zavala county, Tex., and had 50,000 acres of the same sectionized and surveyed and test wells bored at the corners of the sections for the purpose of ascertaining whether water could be found by sinking wells. Appellant also subdivided each section and placed said lands on the market. On the 17th day of January, 1912, a contract was written and signed in behalf of the appellant by E. C. Hughes, one of its agents, and by the appellee, whereby the appellant bound itself to sell and convey to appellee, and appellee bound himself to receive and pay for 40 acres, a quarter of a quarter of a section of said land. After the said contract was written and before it was signed, the appellant's said agent wrote into said contract as a part thereof the following:

"It is agreed to bore on land above described 10⅜-in. casing, guaranteeing water, and draw on R. L. Tolbert for total cost of well when completed."

This contract was executed in triplicate, the appellee receiving one copy thereof, and the appellant's agent Hughes retaining the other copies. At the time the contract was thus signed and delivered, appellee drew and delivered to the said Hughes, as the cash or first payment to be made for the land agreed to be conveyed, his check on a bank in the city of Greenville, Tex., for the sum of $866.66, and it was then agreed, verbally, that said contract was not to become a "completed contract," and the said check was not to be presented for payment and collected until said contract was further signed on behalf of the appellant by its agent W. H. Parish, who was then absent, when he returned to the said city of Greenville. In a few days after the signing of the contract by E. C. Hughes and the appellee, Tolbert, W. H. Parish returned to Greenville, and when first called upon to sign the contract he refused to do so, but later and on the 29th day of January, 1912, as agent of appellant, he signed it. His name was signed under the word "witness" printed in said contract, and in the opinion on the former appeal it is stated that the contract was "witnessed by W. H. Parish," and it so appeared from the record then before this court; but on the subsequent trial it was shown that Mr. Parish signed as appellant's agent, and not as a witness. At and prior to the time the contract was made, the defendant had printed and was circulating as advertising matter a pamphlet purporting to give picture views of its lands in Zavala county, and of farms on those lands, and of wells being pumped for irrigation purposes. These printed pamphlets stated, in substance, that the lands mentioned were irrigable by pumping water from wells; that tracts of land were being irrigated from wells; that sufficient water was being secured, and could be secured, from wells to irrigate the said lands. A copy of the pamphlet above mentioned came into plaintiff's hands before he signed the contract. This suit was filed March 23, 1912, and on October 5, 1914, after the former appeal, hereinbefore referred to, appellee filed his second amended petition on

which the last trial of the case was had. This amended petition alleges the ownership of the lands in Zavala county by the appellant, and that appellant was offering and selling the same as irrigable lands; the execution of the contract mentioned; that by the terms of said contract appellant agreed to sell and cause to be conveyed to appellee the 40 acres of land described therein, by a good and sufficient warranty deed in consideration of the sum of $2,600, to be paid by appellee; that $866.66 was to be paid in cash, and the remainder to be paid in three promissory notes at different dates; that appellant was to sink a well on said 40 acres of land of the dimensions stipulated in the contract and to draw on the appellee for the cost of the well; that the water clause written in the contract meant, and was intended to mean, that the well to be sunk should furnish water sufficient to irrigate the said 40 acres of land.

Said petition further alleges, in substance: That appellant agreed to furnish appellee an abstract of title showing good title in appellant to the said land, and a warranty deed thereto, within a reasonable time. That at the time of the execution of said contract appellee informed appellant's agents that he expected to go at once upon said land and begin work with the view of growing crops thereon during the year 1912; that he would move his family from Greenville, and that he and his minor son, with two teams, would begin work immediately upon said land, but to do this appellee must first have a deed to the land, with abstract of title; and that a well must be sunk thereon. That said agents assured appellee that said requirements would be faithfully met, but that appellant failed and refused to deliver to appellee a sufficient deed to said land until March 15, 1912, when it was too late to prepare said land and make a crop thereon. That appellant failed and refused to sink the well, provided for in the contract, upon said land until on or about May 15, 1912, and that the well then provided was not in accordance with the contract. That appellant's agents, Hughes and Parish, prior to and at the time of the making of the contract for the purchase of said land, stated to appellee that there was an abundance of water underlying said land, and that the same could be irrigated by sinking a well thereon and pumping the water. That said representations were false. That appellee knew nothing of the water supply underlying the said land outside the representations of appellant's said agents. That he only visited the locality once prior to the making of the said contract and spent less than two days there at that time. That the settlements were then all new and few in number. That appellee at the time went over a large section of country hurriedly in an automobile. That the land he afterwards bought was only pointed out to him as being for sale as he passed by the same. It was then unimproved, had no well thereon. That appellee did not make, and at the time and under the circumstances could not have made, any investigation as to the water supply underlying said 40 acres of land, but he relied wholly upon the representations made to him by appellant's agents. That immediately upon receiving a proper deed and abstract of title to said 40 acres of land on March 15, 1912, appellee prepared to go upon the same, and so, within two days thereafter, he left Greenville for La Pryor, and arrived at the latter place on or about March 20, 1912. That appellant had not then begun the well contracted for, and did not begin the same until on or about May 10, 1912. That upon being notified of the completion of the said well appellee requested appellant to provide proper persons and suitable machinery to test same, but the latter persistently refused appellee's said request. That it thus became necessary for appellee to make such provision, and to make the said test. That upon a full and fair test made of the water supply as found in the said well, it proved to be wholly insufficient for purposes of irrigation. That the water found therein was not only insufficient to irrigate 40 acres of land, but was insufficient to irrigate even one acre. That appellant's agents knew at the time said contract was made that there was not sufficient water underlying said land for purposes of irrigation. That appellee, believing said false representations, was induced thereby to make said contract of purchase and agree to pay $65 per acre for said land, when the same was not worth exceeding $10 per acre, to make the cash payment of $866.66, and to deliver to appellant his notes, and of all this appellant's agents were fully informed at the time. The petition further alleges that, under the terms of said contract, it was appellant's duty to supply machinery and to pump and test the said well after it was sunk, but that appellant failed and refused to so test said well, whereby the plaintiff was forced to buy machinery and to employ labor to test the said well; that appellant did not sink a well on said land until about the 15th of May, 1912; that the said land, without irrigation, is wholly unsuited for any kind of successful farming; that by reason of the delay by appellant in furnishing a deed of conveyance and in sinking a well the appellee was prevented from growing a crop on said land; and that he and one of his sons lost their time for eight months. It is alleged that appellee suffered losses as follows: In the value of land by reason of failure of water, $2,200; loss of plaintiff's time eight months, $1,000; loss of plaintiff's son's time for eight months, $480; loss of time for two teams eight months, $400; loss on machinery purchased to pump well, $250; loss for labor paid for testing well, $75—aggregating $4,405.

On October 7, 1914, appellant filed its first

amended answer in reply to appellee's second amended petition, and averred, in substance, that appellee and appellant executed and mutually delivered the contract set out in appellee's petition, on January 17, 1912, and that appellee then made the cash payment mentioned; that the appellant performed all of its obligations under said contract; that it delivered the deed and an abstract showing title within a reasonable time; that the title to the said 40 acres of land was in a man named Lynn, who resided in the state of Arkansas; that it was found that some of the instruments constituting links in the chain of title had not been placed on record in Zavala county, and that certain releases of liens had not been executed and recorded; that appellant diligently prosecuted the work of securing said missing links in the chain of title, and having them recorded, and in furnishing complete abstract; that early in January, 1912, the appellant submitted to appellee an abstract of the chain of title, which appellee rejected; that in the month of February appellant submitted to appellee an amended abstract of chain of title, which appellee also rejected; that all statements and representations made by appellant's agents to appellee about the said 40 acres of land, the water under the said lands, and the crops grown thereon, were substantially true; that appellee did not rely upon any representations about said land made to him by appellant's agents, but pending the said negotiations plaintiff went to Zavala county and himself investigated the said lands before he would make contract to buy, and appellee did not make said contract until after he had investigated the said lands and returned to Greenville, Tex., and that appellee relied upon his own knowledge, information, and judgment; that the water clause in the said written contract did not mean to guarantee water sufficient for irrigation; that when the said contract was written appellee demanded of appellant's agent Hughes that he write in said contract a clause guaranteeing water sufficient for irrigation, but the said Hughes refused to do so, and appellee accepted and signed and delivered the said contract immediately after the appellant's agent had refused to write therein a clause guaranteeing water sufficient for irrigation; that appellant did cause to be sunk upon the said lands a well in full compliance with the condition of the said contract, in accordance with the stipulations; that the said well was sunk and finished, and was ready for use by appellee, on or about the 5th day of April, 1912; that appellant did not test the said well, and it was not bound under the contract to make a test of the said well; that appellee did not properly test the said well and did not pump the said well with sufficient machinery or for a sufficient length of time; that the appellant did not make any false or fraudulent representations to appellee; that the said 40 acres of land was well worth the price paid by appellee therefor; that the well on the said land would, with proper pumping, furnish water amply sufficient to irrigate all, or the greater part, of the said 40 acres; that appellant was in no wise responsible to appellee for any loss on machinery purchased, or for loss of time of appellee and his son and teams. By way of cross-action, appellant alleged that it bored the well provided for in the contract for the purchase of the land in question at a total cost of $635.05; that appellee had agreed to pay such cost and prayed judgment therefor.

The case was tried at the October term, 1914, with the aid of a jury. Upon motion of the appellee, the case was submitted to the jury upon special issues, in the form of questions which were answered by the jury. The appellant filed and presented to the court a motion for a judgment in its favor upon the findings of the jury, which was overruled. The court, upon the findings of the jury, entered judgment for appellee in the sum of $1,990, and a judgment for the appellant on its cross-bill for the sum of $200, with direction that the $200 be set off against the said $1,990 leaving a balance of $1,790 in plaintiff's favor.

[1] The court permitted the appellee to testify, over the objection of the appellant, that W. H. Parish, after the contract for the sale of the land involved in this suit had been signed by E. C. Hughes as agent for appellant, and by the appellee, Tolbert, and mutually delivered on the 17th day of January, 1912, and after appellee had delivered to said agent his check for $866.66, as part payment for the said land, and before the said W. H. Parish, as agent for appellant, had signed said contract, stated to appellee that there was an inexhaustible supply of water under said land, and that they would guarantee an inexhaustible supply for irrigation purposes. The admission of this testimony is complained of by appellant and made the basis of its first and second assignments of error. The propositions contended for are:

"(1) That the terms of the contract having been agreed upon, reduced to writing, signed, and delivered, statements made by W. H. Parish about the supply of water under the land could not have been an inducement to plaintiff to make the contract, and such statements were immaterial. (2) That statements by W. H. Parish about the quantity of water under the land, made after the terms of the contract had been agreed upon and reduced to writing, when there had been evidence introduced tending to show that by agreement the contract was not to be effective until W. H. Parish signed the same, admitted in evidence over the objection of the defendant, were probably considered by the jury upon the question of inducement to plaintiff, and worked an injury to the defendant."

We are inclined to the opinion that the evidence was admissible. It was alleged that the clause in the contract "guaranteeing water" was intended to mean, and did mean, a supply of water from the well to be sunk

on the land sufficient in quantity to irrigate the 40 acres of land purchased by appellee. This clause of the contract, as we said on the former appeal, was manifestly not "inserted therein without regard to the quantity or uses to which the water guaranteed was to be put, and in that respect it evidently does not unequivocally and fully express the intention of the parties. This being true, parol evidence was admissible to show the situation of the parties and the circumstances under which the contract in question was executed for the purpose of ascertaining the meaning of the language under consideration and properly construing said contract." The language, being equivocal, its meaning could only be ascertained "from a full history of the circumstances under which it was used, and for this purpose the court was authorized to receive evidence explaining the subject-matter, the surrounding circumstances, the relation of the parties, and the inducing cause which led up to the making of the agreement, and this is especially true under the acts of fraud in plaintiff's petition." Zavala Land & Water Co. v. Tolbert, 165 S. W. 28. The testimony objected to was, we think, admissible as tending to show the meaning of the language "guaranteeing water" as used in the contract entered into between appellant and appellee and an "inducing cause which led up to the making of the agreement."

[2] The testimony objected to was not inadmissible, we think, because the contract had been reduced to writing and signed by E. C. Hughes as agent for appellant, and by the appellee, Tolbert. It very clearly appears that, notwithstanding the contract was so signed, it was not completed and binding upon the parties until signed by appellant's agent Parish. In Merrill v. Tehama Consol. Mill Co., 10 Nev. 125, the general rule is said to be that:

"Where parties enter into an agreement and the understanding is that it is to be reduced to writing, or, if it is already in a written form, that is to be signed before it is acted on or to take effect, it is not binding until so written or signed."

And in 7 Am. & Eng. Enc. of Law, 140, the rule is stated in the following language:

"Where the parties make the reduction of the agreement to writing and its signature by them a condition precedent to its completion, it will not be a contract until that is done, and this is true although all the terms of the contract have been agreed upon."

[3] Until the contract was signed by appellant's agent Parish, either party thereto was at liberty to withdraw from it, and the reiteration by Parish that there was an inexhaustible supply of water underlying the land, and in effect that appellant would guarantee that there was an inexhaustible supply of water underlying the land for the purposes of irrigation, just before he (Parish) signed the contract, was relevant to the issue raised as to the meaning of the clause "guaran-teeing water" and the intention of the parties in inserting it in the contract. But if it should be conceded that the testimony was not, strictly speaking, admissible, still in view of the express finding of the jury that the representations made in reference to the extent of the water supply underlying the land were made before January 17, 1912, and the oft-repeated and practically undisputed declarations of appellant's agents prior to and at the time of the signing of the contract by E. C. Hughes and the appellee on said 12th day of January, 1912, to the effect that there was an inexhaustible supply of water underlying the land and amply sufficient for irrigation purposes, it is improbable the jury was influenced to the prejudice of appellant by the testimony under consideration.

[4] The court submitted the following issue to the jury:

"The contract between plaintiff and defendant for the purchase and sale of 40 acres of land in Zavala county, Tex., provides that 'water is guaranteed.' You will find from the evidence and state in answer hereto for what purpose and to what extent water was guaranteed; that is, you will determine from the evidence, and so state in your answer, what the intention of the parties was with reference to the quantity of water referred to in the contract and the use to which it was to be put."

Appellant contends that the court erred in the submission of this issue, in that it "embraces two distinct questions, and confuses matters of fact which are sharply contested and matters of fact which should be separately submitted to the jury; that the question submitted assumes that there was water guaranteed for a purpose, when the evidence raised a sharp issue as to whether water was guaranteed for use for any purpose; that said question assumes that the intention of each of the parties at the time the contract was executed was the same; and that it was the intention of each that the well was to furnish water which should be put to some use, when the said matter was an issue of fact for the jury." The manner and form of submitting the issue in question was not materially erroneous, if erroneous at all. We agree with the views expressed by counsel for appellee: First, that the purpose for which water was guaranteed in the contract, and the quantity of water so guaranteed, are matters so intimately related, and so nearly identical in meaning, that the division of the question as suggested would not have made the same more intelligible, but would have involved needless repetition. Second, that the clause in said contract guaranteeing water had some meaning, and expressed some purpose, were uncontroverted facts, and the court committed no error in so assuming. Third, the parties having agreed upon the terms of the contract, their intentions as to its legal significance are presumed in law to be in accord and to unite in one purpose; such purpose or intention it was the

province of the jury to determine from the contract itself interpreted by the surrounding circumstances; therefore, the question propounded by the court was not upon the weight of the evidence. The answer of the jury to the question is as follows: "Water for irrigation, sufficient to irrigate said lands." As said by counsel for appellee, this answer of the jury is definite and clear, it is consistent with other answers made by them in response to kindred questions, and there appears to be no reason or legal ground for the claim that the question objected to was not fully understood by the jury. The testimony discloses that appellee repeatedly stated to appellant's agents that he desired to purchase the land for trucking purposes, and that he would not buy the land unless there was water for producing this character of crops. He further testified that the purpose of sinking the well was fully discussed at the time the contract was drawn and signed, and that no other purpose was mentioned than that of irrigation. The dimension of the well—10⅜ inches in diameter—as set out in the contract, and as shown by the undisputed testimony, discloses a size of well used only for purposes of irrigation; for other purposes, wells from 4 to 8 inches in diameter were used, and these latter were usually propelled by windmills.

[5] The fourth assignment of error is, in substance, that the finding of the jury to the effect that the clause in the contract "guaranteeing water" was intended by appellant and its agents to mean a supply of water sufficient for the irrigation of the land purchased by appellee, is not only against the great weight of the evidence, but wholly without evidence to support it. Upon the former appeal of this case, we held that the appellee's allegations that said clause in the contract was intended by the parties to mean a supply of water from the well to be sunk on appellee's land sufficient to irrigate the same were not sustained by a preponderance of the evidence as it then appeared in the record, and gave that as one of the reasons why the case should be reversed. But upon a very careful review and consideration of the evidence now found in the record, although in many respects quite the same as it was on the former appeal, we have reached the conclusion that we would not be warranted in saying that the finding of the jury with respect to the meaning of said clause of the contract was wholly without evidence to support it. The rule in such case in this state is not to disturb the jury's finding. The assignment will therefore be overruled.

Nor do we think the finding of the jury, to the effect that the representations and statements made by appellant's agents about the quantity of water underlying the land sold to appellee were false, is without substantial evidence to support it.

[6] Appellant complains of the tenth question submitted by the court to the jury. This question reads:

"If you have found that such representations were made, then did plaintiff rely upon such representations, and was he induced thereby to execute the contract and purchase said lands? Or did he rely upon his own judgment as to water supply and irrigation, after going over the land and looking at it and making an investigation for himself?"

The jury answered the question as follows: "He relied upon their agents' representations." The proposition asserted under this assignment is that:

"Under the undisputed evidence, it follows as a matter of law that plaintiff did not rely upon representations of defendant's agents, and this was not a question for the jury."

The evidence bearing upon the question presented is entirely too voluminous to be quoted in this opinion, and we shall not undertake to do so. We agreed with the contention made by the appellant on the former appeal of this case to the effect that the weight and preponderance of the evidence then before the court showed that the representations made by appellant's agents to the appellee in regard to the quantity of water that could be procured from a well on the land purchased by appellee were not relied upon by appellee and did not operate as the inducement of his purchase. But we are of opinion that the testimony now contained in the record touching the question, while largely the same as it was on the former appeal, is materially different therefrom in some important particulars and of such a character as called for the submission of the issue to the jury. Appellee swore positively that he relied upon the representations made to him by appellant's agents in reference to the supply of water to be obtained by sinking a well on the land conveyed to him; that, while he went upon the lands offered for sale by appellant before the execution of the contract made with appellant, the condition of the improvements found and his means of investigation were such that he could obtain no accurate and reliable information as to the extent of the water supply underlying the land. He says he was there only a day and a half; that he went down there on a holiday with a crowd, not to investigate the water supply any more than to look at the wells on the lands, but to look at the country generally; that just what he saw riding around in that way, and what appellant's agent told him, was all he knew about the water. He further said there was no well on the land he bought, which is an undisputed fact, and that the nearest well in its locality then was the Lundt well, and that there was a 40-acre tract between that well and the land sold him; that the Lundt well was not in operation at the time he saw it, but there was water in the reservoir; that the demonstration well was the only well he saw running to amount to anything;

that they started up two other little pumps and ran them a few minutes.

This and other testimony found in the record tends to show that there was practically no irrigation in progress at the time appellee saw the lands and before he made the contract to buy. The appellant, however, had sunk wells on the lands, other than the land bought by appellee, and was then engaged in advertising extensively the same for sale as being fully susceptible of irrigation from water obtainable from wells already sunk and to be sunk thereon. The representations made of the irrigability of the lands were not the mere expressions of opinion, but as demonstrated facts. The jury found that the appellee requested appellant's agent Hughes to write into the contract a guaranty of water sufficient for irrigation, and that Hughes refused to do so, but that the reason given by Hughes for his refusal to write such guaranty was that "he could not tell the machinery he would use." The jury further found that appellee provided suitable machinery and properly pumped and tested the well drilled by appellant on the 40 acres of land sold him, and that the failure of the well to furnish an adequate supply of water to irrigate said land was due to a lack of a sufficient supply of water underlying the same. These were specific findings, among others, made by the jury, and establish that the refusal to insert in the contract the requested provision of guaranty of water sufficient for irrigation was not an unqualified refusal to do so, and left, we now think, as an issuable fact the meaning and purpose of the language guaranteeing water written in the contract to be determined by the jury from a full history of the circumstances and facts under which it was so written. Testimony showing such facts and circumstances was clearly admissible, not, as we said on the former appeal of this case, for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the said words, "guaranteeing water." Appellant's agents were not only advertising for sale generally the lands owned by it by pamphlets and other printed matter, some of which fell into the hands of appellee, as unquestionably susceptible of irrigation from water obtainable by wells bored on the land, but practically at all times in negotiating the sale to appellee and at the very time the contract for said sale was made represented that there was an inexhaustible supply of water for irrigation underlying the land. Appellee, in substance, informed these agents before and at the time of the execution of the contract of purchase that he would not purchase the land at any price unless there was water underlying the same sufficient for irrigation and we do not feel, especially since two juries have found that such representations under the

evidence adduced were not true, and in effect that such representations were the "inducing cause which led up to the making of the contract of purchase by appellee, and that the parties intended by language of said contract guaranteeing water" a guaranty of water sufficient for irrigation, that we would be justified in reversing the judgment of the district court on the ground that it appears from the evidence, as a matter of law, that the appellee did not rely upon the representations made by appellant's agents in regard to the quantity of water that could be procured from a well on the land and did not operate as the inducement of his purchase; or that it so appears that the words, "guaranteeing water," were not intended by the parties to mean water enough for irrigation. If the clause in the contract, "guaranteeing water," was intended by the parties to mean water sufficient for irrigation, the refusal of appellant's agents to add thereto language that would show expressly that such was their intention would not preclude the assertion and proof thereof by appellee, or his right to avail himself of the benefits of such a stipulation. Indeed, if the parties intended said clause to mean water sufficient for irrigation, the legal effect of the words used is the same as a full expression of such intention would be.

[7] There was no error in refusing to submit the question requested by appellant, as to whether the appellant and its agents, at the time the contract involved in this suit was signed, believed and had good reason to believe that water sufficient for the purpose of irrigation could be obtained by sinking a well upon said land. If such question had been submitted and answered in the affirmative, appellee would not have been relieved thereby from liability for any element of damage sought to be recovered. If appellant falsely represented to appellee that there was water enough underlying the land for the purpose of irrigating the same, and said representations were relied upon by appellee, appellant would be liable, although at the time the representations were made appellant and its agent believed them to be true. This we believe to be the clearly established rule of this state. Mitchell v. Zimmerman, 4 Tex. 76, 51 Am. Dec. 717; Boles v. Aldridge, 153 S. W. 373; Id. (Sup.) 175 S. W. 1052.

[8] The tenth assignment of error is that the appellant's motion for a new trial ought to have been granted, "because the answer of the jury to the fifteenth question submitted by the court, to the effect that a deed and abstract were not furnished within a reasonable time under the circumstances, is without evidence to support the finding." There was no stipulation in the contract fixing the time of performance, and the rule is substantially as stated by appellant, namely, that in such case the law allows a reasonable time, and what is a reasonable time depends

upon the nature and character of the thing to be done, the circumstances of the particular case, and the difficulties surrounding and attending its accomplishment. Ordinarily, the question is one of fact for the determination of the jury, and was, we believe, in this instance. To detail all the evidence touching the question would extend this already long opinion to too great length, and we shall content ourselves, in disposing of the assignment of error presenting it, with the statement that the jury found that the appellant did not within a reasonable time after the contract for the purchase of the land in question became effective furnish the appellee a good and sufficient deed and abstract of title to said land, and that we are not prepared to say the evidence did not justify such finding.

[9, 10] The eleventh and last assignment of error is, in substance, that the answer of the jury to the twenty-first question propounded to them by the court, whereby the jury found that the reasonable cash market value of the land in controversy was $40 an acre, is against the overwhelming weight of the evidence, and is not supported by any evidence. This contention is based upon the fact that the witnesses who testified as to the market value of the land varied widely as to such valuation and no witness testified that the land was worth $40 per acre. The appellee testified that the market value of the land was about $10 per acre. E. G. Dellinger testified that without water for irrigation it was worth about $10. N. E. Peak, that its market value was $20 or $25. E. C. Hughes, that its value as it stood at the time of the trial was $85 per acre. I. B. Hopper, that at a fair market value it ought to be worth $80 or $85 per acre. A. F. Scott, that the 40 acres ought to be sold at $75 per acre, and B. F. Kite testified that he considered appellee's 40 acres of land worth $100 per acre. It further appears without dispute or contradiction that the contract price per acre for the 40 acres of land sold to appellee was $65 per acre, or $2,600 for the total number of acres, and that during the trial of this case, and in the presence of the court and jury, and apparently as part of the proceedings in the trial, the appellee sold and conveyed said land to C. R. Rhea for $50 per acre, aggregating $2,000. The testimony standing thus as to the value of the land, it is argued, in effect, that the jury, in arriving at that verdict and measuring the damages claimed by appellee evidently disregarded the evidence, and disclose thereby that they were not fair and impartial. We are not prepared to say that such conclusion necessarily follows from the action of the jury. We are inclined to think, as contended by appellee's counsel, that when witnesses differ, as they often do, as to the value of property, their statements with reference thereto being the mere expression of opinion, the jury may properly arrive at their verdict from a consideration of all the testimony and credibility of the witnesses, and are not required to adopt the opinion or testimony of any particular witness or number of witnesses, and their verdict should not be disturbed unless it appears that it is clearly wrong. But, however this may be, the appellant, we think, has no just cause to complain of the action of the jury in finding that the land involved herein was of the market value of $40 per acre. As above stated, the contract price for said land was $2,600, and the appellee sold and conveyed the same for $2,000. The jury, in addition to the finding that the land was worth $40 per acre, which for the total number of acres amounts to $1,600, found that the value of the barn and fencing built by appellee on said land and which he was entitled to recover, as a part of his damages, was $400. Just why these elements of appellee's damages were submitted as separate and distinct matters from his loss on the land proper does not appear, but that they entered into and were proper to be considered by the jury in arriving at the total amount of his loss on the land can hardly be questioned. That they were submitted separately, however, does not alter the fact that they formed a part of appellee's loss on the land, and, having been submitted as a separate issue, it is not improbable that the jury recognized their relation to the land itself and fixed the value of the land and of the barn and fence at the respective amounts they did to correspond with the amount appellee sold the land and said improvements for to C. R. Rhea; for it will be observed that the two values fixed by the jury amount to a valuation of the land and said improvements at $50 per acre, or a total amount of $2,000.

Again, the judgment of the court contains the following recitation:

"The jury having found, in response to the twenty-first question propounded to them, that the reasonable cash market value of the land is $40 per acre. and it appearing to the court from undisputed evidence that the plaintiff received for said land by sale thereof made in the presence of the court, during and as a part of the proceedings herein, the sum of $50 per acre, the court finds, and so holds, that the measure of plaintiff's damage, in so far as the loss upon the land itself is concerned, is the difference between the contract price, to wit, $2,600, and the amount received by the plaintiff for the land by reason of said sale, to wit, $2,000."

It is then adjudged that the appellee recover of appellant the several sums awarded him, including $600 loss on land and the item of $400, the value of the improvements placed on the land by appellee aggregating the sum of $1,990. But, again, the court in that portion of the judgment quoted above correctly states the measure of appellee's damages with respect to his loss on the land, and as it appeared without dispute that he had contracted to pay $2,600 for the land and sold it for $2,000, the measure of appellee's damages in that regard became a question of

law and was not a question of fact to be submitted to the jury. The amount allowed appellee therefore as loss on land and included in the judgment rendered was proper regardless of the finding of the jury upon the issue. Such allowance resulted in the rendition of a judgment against appellant for $200 less than would have been rendered had the finding of the jury for loss on the land been strictly adhered to; and it follows that it has not been harmed by the finding of the jury complained of, even if it should be conceded that such finding was not based on the evidence adduced with respect to the value of the land.

We recognize that some of the questions raised are close, and some of the conclusions announced have not been reached without difficulty. The case has been tried twice with similar findings by the jury, which findings in both instances have been approved by the trial judge. It is immaterial what the conclusions of this court might have been with regard to some of the questions involved, had they been submitted as original propositions. Our conclusion is that, if it be conceded that some of the findings of the jury on material issues were against the preponderance of the evidence, yet there was some substantial evidence upon which to base such findings. Believing that the verdict of the jury is not without evidence to support it and that none of appellant's assignments disclose reversible error, the judgment is affirmed.

Affirmed.